J-S02016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | No. 2518 EDA 2016 |

Appeal from the Order Entered July 7, 2016
in the Court of Common Pleas of Monroe County
Civil Division at No:  14 OCA 2016

BEFORE:   FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 23, 2017**

R.S. ("Father") appeals from the order entered July 7, 2016, in the Court of Common Pleas of Monroe County, which dismissed his petition to involuntarily terminate the parental rights of his aunt, W.S. ("Adoptive Mother"), to his biological daughter, A.S.S. ("Child").  After careful review, we affirm.

The factual and procedural history of this matter is not entirely clear from the certified record.  According to the trial court's opinion, Child was born in 2005 and adjudicated dependent in September 2012.  Trial Court Opinion, 8/29/16, at 1.  Child was then placed in the care of Adoptive Mother in February 2013.  *Id.*  Both Father and Child's mother relinquished their parental rights to Child voluntarily in January 2014, and Adoptive Mother adopted Child in August 2014.  *Id.* at 1-2.  Father was incarcerated at the time he relinquished his parental rights, but was released at some

point later that year. ***Id.*** at 1; N.T., 7/5/2016, at 24. On November 25, 2015, Father and Adoptive Mother signed a written custody agreement. ***See*** Petitioner's Exhibit 1 (Custody Agreement). The agreement provided that Father would have sole legal and physical custody of Child. ***Id.*** The record reveals that Father did not exercise custody of Child pursuant to the agreement, and that Child has continued to reside with Adoptive Mother. N.T., 7/5/2016, at 23, 26.

On March 28, 2016, Father filed a petition to involuntarily terminate the parental rights of Adoptive Mother. The trial court conducted a hearing on May 17, 2016, during which the court heard the testimony of Father and Adoptive Mother. Following the hearing, on May 20, 2016, the trial court entered an order directing Father's counsel to prepare a brief on the issue of whether Father possessed standing to file the involuntary termination petition. The trial court also appointed a guardian *ad litem* ("GAL") for Child, and directed Monroe County Children and Youth to conduct home assessments of Adoptive Mother and Father, based on allegations made by Father that Child was being abused while in Adoptive Mother's care.

On June 21, 2016, Child's GAL filed a motion to strike Father's involuntarily termination petition on the basis that Father lacked standing, as well as a petition to void the November 25, 2015 custody agreement *ab initio*. The trial court conducted a second hearing on July 5, 2016, during which the court heard testimony from Father; Father's friend, K.S.; Father's

cousin, F.C.; Father's fiancée, S.F.; and Jennifer Payne, who testified on behalf of Monroe County Children and Youth. On July 7, 2016, the trial court entered an order granting the GAL's motion to strike and dismissing Father's petition due to a lack of standing. Father timely filed a notice of appeal on August 4, 2016. Father filed an amended notice of appeal on August 5, 2016, which included a concise statement of errors complained of on appeal.

Father now raises the following issue for our review. "Does [Father] have standing under 23 Pa.C.S.A. § 2512(a)(3) to file a petition for the involuntary termination of parental rights?" Father's Brief at 4.

Father's sole issue on appeal presents a question of law. As such, our standard of review is *de novo*, and our scope of review is plenary. ***In re Hickson***, 821 A.2d 1238, 1242 (Pa. 2003) (citing ***Phillips v. A-Best Products Co.***, 665 A.2d 1167, 1170 (Pa. 1995)).

Standing to file a petition for involuntary termination of parental rights is governed by Section 2512(a) of the Adoption Act, 23 Pa.C.S.A. § 2512(a). This section provides as follows.

> **(a) Who may file.--**A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:
>
> > (1) Either parent when termination is sought with respect to the other parent.
> >
> > (2) An agency.
> >
> > (3) The individual having custody or standing in loco parentis to the child and who has filed a report of

intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

23 Pa.C.S.A. § 2512(a).

Father argues that he had standing to file a termination petition pursuant to Section 2512(a)(3). Father's Brief at 8. Father concedes that he does not stand *in loco parentis* with respect to Child, but insists that he has custody of Child pursuant to his November 25, 2015 agreement with Adoptive Mother. *Id.* Father further contends that the trial court acted improperly by refusing to accept this informal custody agreement, because such agreements are typically in the best interest of the child and should be favored as a matter of public policy.[1] *Id.* at 8-11

The trial court rejected Father's contention that he has standing pursuant to Section 2512(a)(3). The court reasoned that the November 25, 2015 custody agreement between Father and Adoptive Mother is invalid, as Adoptive Mother was unrepresented at the time she signed the agreement, and because the agreement "was not the product of an arms-length transaction that took into consideration the best interests of Child and was

_____

[1] We observe that Father did not file a report of intention to adopt with his termination petition as Section 2512(a)(3) requires. However, 23 Pa.C.S.A. § 2531(c) provides that a prospective adoptive parent is not required to file a report of intention to adopt "when the child is the child . . . of the person receiving or retaining custody or physical care."

neither presented to nor adopted by [the trial court]." Trial Court Opinion, 8/29/16, at 9. The trial court further emphasized that Father and Adoptive Mother never actually followed the agreement, and that Father has had no recent contact with Child.[2] *Id.*

We agree with the trial court that Father lacked standing to file an involuntary termination petition with respect to Adoptive Mother. Initially, our case law is clear that "custody," as the term is used in Section 2512(a)(3), refers to legal custody. *In re Adoption of Crystal D.R.*, 480 A.2d 1146, 1148 (Pa. Super. 1984). This Court has explained that even a child's foster parents, with whom that child has lived continuously for four and a half years, do not possess standing to file an involuntary termination petition, because they lack legal custody over that child. *See id.*

Moreover, "[b]ecause children are not mere chattel, agreements regarding custody and visitation are always subject to court review and adjustment in the best interests of the child." *Huss v. Weaver*, 134 A.3d 449, 455 (Pa. Super. 2016), *appeal denied*, 2016 Pa. LEXIS 2245, 2016 WL 5799062 (Pa. 2016) (citations omitted). "Although an agreement between

---

[2] The trial court also suggested that this appeal should be dismissed due to Father's failure to request a transcript of the July 5, 2016 hearing. Trial Court Opinion, 8/29/16, at 5-7. The trial court docket indicates that this transcript was requested on September 21, 2016, and a copy of the transcript is contained in the certified record on appeal. We therefore decline to dismiss Father's appeal on that basis.

parties as to custody is not binding upon the court, . . . where the parties' agreement is incorporated into a court order, the order binds the parties and governs further court action in the same manner as any other custody order[.]" **Daniel K. D. v. Jan M. H.**, 446 A.2d 1323, 1324 n.1 (Pa. Super. 1982) (citations omitted); **see also** Pa.R.C.P. 1915.7 ("If an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel.").

Here, Father testified that Adoptive Mother agreed to let Child live with him after he purchased a home in November of 2015, which resulted in the parties' November 25, 2015 custody agreement. N.T., 7/5/2016, at 14-15. Despite this agreement, Father admitted that he has not seen Child at all since around the time of the 2015 Thanksgiving holiday. **Id.** at 23, 26. Father further admitted that no court has ever approved the parties' custody agreement, nor has he attempted to present the agreement to a court for approval. **Id.** Given that Father has had no contact with Child since at least November 2015, and given that the custody agreement was never adopted as an order of court, it is clear that Father did not possess legal custody of Child at the time he filed his involuntary termination petition on March 28, 2016. Father therefore did not have standing to file an involuntary termination petition pursuant to Section 2512(a)(3).

Accordingly, because we conclude that it was proper for the trial court to dismiss Father's petition to involuntarily terminate the parental rights of Adoptive Mother based on his lack of standing, we affirm the court's July 7, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2017