J-E03001-15

2016 PA Super 24

| | | |
|---|---|---|
| AMY HUSS, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| JAMES P. WEAVER, | | |
| | Appellee | No. 1703 WDA 2013 |

Appeal from the Order Entered September 25, 2013
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-1209

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J., AND JENKINS, J.

CONCURRING OPINION BY BOWES, J.:            **FILED FEBRUARY 05, 2016**

I concur with the learned majority insofar as it concludes that the trial court erred in sustaining the preliminary objections in the nature of a demurrer filed by James P. Weaver ("Father") and dismissing the amended complaint for breach of contract, wherein Amy Huss ("Mother") sought to enforce monetary aspects of a child custody agreement. Stated plainly, I agree that the agreement is not contrary to public policy *per se.* I write separately, however, because I believe that, while Mother's amended complaint is legally sufficient to survive preliminary objections, it is premature to opine as to whether the provision is enforceable in this case.

Herein, the trial court sustained Father's preliminary objections in the nature of a demurrer and dismissed Mother's amended complaint. Father's preliminary objections characterized the $10,000 payment as a penalty.

Mother countered that the parties intended for the payments to form the *corpus* of a defense fund that reflected a reasonable approximation of the expected costs of litigation if Father initiated further custody proceedings. The trial court adopted Father's perspective that the fee was a penalty. The court reasoned, "The provision . . . penalizing only the Father if he files any custody or visitation petition clearly violates public policy and is unenforceable. Thus, the complaint is legally insufficient and a demurrer is granted." Trial Court Opinion and Order, 9/25/13, at 6.

At the outset, I reiterate the appropriate standard of review of an order sustaining a demurrer as follows:

> When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*B.N. Excavating, Inc., v. PBC Hollow–A, L.P.*, 71 A.3d 274, 277-278 (Pa.Super. 2013) (citations omitted) (*en banc*). "A demurrer should be sustained only when the complaint is clearly insufficient to establish the pleader's right to relief." *Id*. at 278.

In order to review Father's demurrer properly, the trial court was required to determine whether the law precluded recovery notwithstanding Mother's well-pleaded factual averments and all reasonable inferences that could be drawn therefrom. Instantly, Mother's complaint averred, *inter alia*, that: 1) she and Father entered an accord wherein he agreed to pay her $10,000 each time that he filed a document seeking to modify or amend the custody arrangement; 2) Father, a lawyer, helped draft the agreement and had the financial means to satisfy the payment provision; 3) Father filed numerous pleadings seeking to modify custody but failed to pay the negotiated fee; and 4) Mother incurred damages as a result of Father's breach of contract.

The custody accord, which Mother attached to the amended complaint as Exhibit A, provided, in pertinent part, as follows:

> WHEREAS, currently [Mother] is a real estate agent capable of earning large commissions if she works excessive hours and [Father] is an attorney capable of earning a large salary[.]
>
> . . . .
>
> 4. <u>Modification of Agreement</u>. This Agreement may only be modified or amended by the parties by a written instrument signed by both [Father] and [Mother]. The parties acknowledge that this Agreement may be modified or superceded [sic] by a court of competent jurisdiction. In the event that [Father] files a complaint, motion, petition or similar pleading seeking the modification or amendment of the custody and/or visitation provisions set forth herein, [he] agrees to pay [Mother] $10,000 for each modification or amendment sought.

Amended Complaint, 4/19/13, Exhibit A.

A proper evaluation of Father's preliminary objections is limited to the foregoing factual averments and all reasonable inferences that flow from those facts. While the trial court referenced the appropriate standard of review, in reality, it disregarded Mother's well-pleaded averments and elevated Father's unsupported assertion that the fee arrangement was actually a penalty provision. However, since neither Mother's amended complaint nor Exhibit A indicates that the payments were penalties, the trial court committed reversible error in distorting its review of the pleadings in order to reach a contrary conclusion. ***See B.N. Excavating, Inc.***, ***supra*** at 278 (trial court committed reversible error where it "based its decision . . . upon a single disputed averment in Appellees' preliminary objections.").

Instantly, the four corners of the custody accord do not establish whether the $10,000 payments were intended either as penalties or a defense fund. The agreement simply does not disclose the intended purpose of the payments. Moreover, nothing in the amended complaint or custody accord revealed, much less suggested, that the fee provision was crafted as a penalty or as an impediment to Father's ability to litigate custody arrangements. Rather, the amended pleading and attached exhibit indicated that Father, a lawyer, both participated in drafting the provision that established the fee and had sufficient financial resources to pay it. Accordingly, mindful that the correct analysis is limited to Mother's amended

complaint and the attached exhibit, I agree with the learned majority that the trial court erred in sustaining Father's preliminary objections to Mother's amended complaint on the basis that the fee provision was facially unenforceable as contrary to public policy. At this juncture in the litigation, it does not appear with certainty that the law would preclude Mother from recovery based upon the facts averred.

While the majority does not state it expressly, it intimates that the fee provision is enforceable. In its summation, the majority concludes, "based on our ruling here that the '$10,000 clause' is not unenforceable as against public policy, damages for [Father's] breach of this provision may be available to [Mother]." Majority Opinion at 14. However, in my opinion, it is premature for this Court to uphold the enforceability of this clause without first reviewing the intent of the parties as it relates to the fee provision. As Judge Jenkins outlines in her dissenting opinion, it is beyond peradventure that children have rights in custody disputes, and the best interest of the child is the paramount consideration in all custody litigation. Dissenting Opinion at 4 (collecting cases). Furthermore, a parent's custodial rights are inferior to a child's right to live in an environment that provides for his or her best interest. *Id*. at 5 n.2.

For the reasons expressed by the trial court and highlighted by the learned dissent, the agreement to assess Father $10,000 per filing might, in fact, constitute a penalty or at least impermissibly inhibit the legitimate

exercise of Father's legal rights depending upon facts and circumstances that have not yet been fully divulged through discovery. Although Mother's current assertions that the fee is not penal in nature and that Father had the resources to pay it are sufficient to survive Father's demurrer, as the case proceeds, facts may reveal the provision as a penalty or contrary to public policy based upon its chilling effect. Without a doubt, to the extent that a parent who seeks to achieve the child's best interest by utilizing the court system lacks financial resources to pay the agreed-upon fee, the impediment to that parent's ability to seek redress would be unenforceable as contrary to public policy. *See Wick v. Wick*, 403 A.2d 115, 116 (Pa.Super. 1979) ("The person having custody of a child should be permitted access to the courts whenever necessary to protect the child's welfare.").

Although not established by the four corners of the instant accord, the trial court's characterization of an agreed-upon payment as a penalty, impairment, or impediment may prove accurate as discovery proceeds. For example, if the fee creates a significant financial burden, the required payment of $10,000 could constitute a penalty, or at least, an intractable barrier that inhibits the legitimate exercise Father's right to seek the trial court's determination of the child's best interest. Additionally, situations may materialize within the custodial parent's household that increase the risk of harm to the child in that environment, *e.g.*, domestic violence, drug abuse, or the habitation of a person who presents a danger to the child. The

emergence of any of these conditions may be grounds for a trial court to modify a custody agreement in pursuit of the child's best interest. However, before a trial court can confront that issue within the parameters of a private custody dispute, the matter has to be raised by a person with standing, *i.e.*, the noncustodial parent. Absent the capacity to file a motion to modify the custody order without concern for an ability to satisfy the fee outlined in an agreement, the matter of the child's best interest never comes before the trial court, and the child's best interest is not achieved. This is the particular harm that the trial court was attempting to avoid herein.

Conversely, however, the fee might, in fact, reflect a reasonable defense fund that protects one parent against excessive or vexatious litigation initiated by a parent with vastly superior financial resources. In this situation, where the intent is to place the litigants on relatively equal footing, a fee of $10,000 may well be reasonable depending on the parent's relative financial means. It certainly is not contrary to public policy to provide a disadvantaged litigant equal access to the court or protect him or her from abusive litigation. Both of these concepts provide a firm basis upon which the courts can ascertain the child's best interest.

The current facts and procedural posture of this case supply an inadequate basis for either the trial court's determination that this type of provision is fundamentally contrary to public policy or the majority's suggestion that the $10,000 fee is enforceable. Several factors exist that

the trial court was unable to contemplate in this case due to the procedural posture of the matter and the fact that its review was limited to Mother's pleadings. Prior to reaching the ultimate decision regarding enforceability, a determination must first be made in consideration of the dynamics of this precise agreement vis-à-vis the parties' intentions and each person's relative financial status. Only then, after full deliberation, should the trial court determine the provision's enforceability.

Accordingly, for the foregoing reasons, I concur with the majority's decision to reverse the trial court order that sustained Father's preliminary objections to Mother's amended complaint. However, in my view, it is premature to confront the ultimate determination regarding whether the fee provision is, in fact, enforceable under the procedural posture of this case. Unlike my esteemed colleagues, I would unambiguously limit the holding in this case to the record before the trial court at this time.

Judges Shogan, Lazarus and Stabile join this Concurring Opinion.