J-A26015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.E.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.A.K. | : | |
| | : | |
| Appellant | : | No. 377 WDA 2019 |

Appeal from the Order Entered February 26, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 17-90586-C

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY SHOGAN, J.:     FILED: December 20, 2019

B.A.K. ("Father") appeals from the order entered February 26, 2019, which awarded primary physical custody of his sons, N.K., born in December 2011, and A.K., born in May 2015 (collectively, "the Children"), to S.E.W. ("Mother") and awarded him partial physical custody.  The order also awarded both parties shared legal custody.  After careful review, we affirm.

We summarize the relevant facts and procedural history of this matter as follows.  Mother and Father met in 1995 and married five and one-half years later.  N.T., 7/24/18, at 27-28.  Their relationship soured in 2015, and they separated in February 2016.[1]  *Id.* at 44.  Following separation, Mother and Father agreed informally that Father would exercise physical custody of the Children for four overnight periods every two weeks.  *Id.* at 45.  This

_____

[1] At the time of the hearing in this case, Mother and Father were in the process of a divorce.  N.T., 7/24/18, at 26.

arrangement lasted until approximately August 2017, when Mother informed Father that she would be reducing his overnight custody. *Id.* at 88. This prompted Father to commence the underlying proceedings. *Id.*

Specifically, Father filed a complaint on September 5, 2017, requesting shared legal and physical custody of the Children. On September 14, 2017, Father filed another pleading, which he entitled, "Motion to Confirm Custody and Request for an Interim Custody Order." In the motion, Father averred that Mother had been denying his requests for custody of the Children and that she had not permitted him to exercise overnight custody since the beginning of September. Thus, Father requested that the trial court enter an interim order granting him at least the custody time that he had exercised prior to September. The trial court entered an interim order granting the motion that same day. The court awarded Father shared legal custody of the Children as well as partial physical custody on a rotating two-week schedule. During the first week, Father was awarded partial physical custody from Monday at 4:30 p.m. until Tuesday at 9:30 a.m., and from Friday at 3:30 p.m. until Sunday at 7:30 p.m. Interim Order, 9/14/17, at 1-2. During the second week, Father was awarded partial physical custody from Wednesday at 4:30 p.m. until Thursday at 9:30 a.m. *Id.*

Ultimately, the parties proceeded to a custody hearing, which took place on July 23-24, 2018. The first day of the hearing began with the testimony of psychologist, Eric Bernstein, Ph.D., who performed a custody evaluation and prepared a report detailing his findings. N.T., 7/23/18, at 5. Dr. Bernstein

found that Mother served as the Children's primary caretaker during most of their lives and that the Children were thriving in her care. *Id.* at 26-28. Nonetheless, Dr. Bernstein did not believe that Father was an unsuitable parent for the Children and recommended that the parties consider increasing his physical custody. *Id.* at 22-23. Based on reports that the Children had been displaying increased agitation and insecurity at the time of custody exchanges, he recommended that Father's custody increase gradually. *Id.* at 23-24. Dr. Bernstein emphasized the Children's need for stability and advised caution when changing their custody schedule. *Id.* at 27-28. He explained:

> [W]hat was most compelling or persuasive, if that's what we're getting to, is the fact that [Mother] has been the primary caretaker. The [C]hildren were in a stable situation and thriving, and [Father] has been exercising eight custody overnights per month. So, to leap to an additional six overnights, in my opinion, would have been a large step, and not a step that I supported at the time of the evaluation. Now, that does not mean that they can't get to that point. In fact, if they can, fantastic for the [C]hildren. But I was recommending a bit of a more caution, [*sic*] . . . in gradually working up and see[ing] how the [C]hildren adjust and see[ing] how [Father] adjusts with his own work schedule. However, that may or may not be an obstacle. And then we can measure accordingly. As you said, they are young; so this is a perfect opportunity to see how everybody responds to these gradual or incremental changes, as opposed to -- going to a more extreme arrangement and then having to backtrack if there is an issue would be much harder than if you were to take steps.

*Id.*

The trial court next heard testimony from Father, who requested equally shared physical custody of the Children. N.T., 7/23/18, at 113. Father testified that Mother undermines his role as a father, fails to encourage his

- 3 -

relationship with the Children, and makes decisions regarding the Children without consulting him. *Id.* at 114-126. In addition, Father attempted to challenge Dr. Bernstein's recommendation by asserting that the Children will enjoy greater stability by spending more time with him. *Id.* at 133, 198-200. He maintained that the Children would have the benefit of stability as long as their schedules stay the same from week to week and both parents receive significant overnight custody. *See id.* at 133, 198-200 ("And that's where stability is. You got to have the overnights so you can be a full parent and not just a guy that comes and takes them out to dinner[.]").

Of particular relevance to this appeal, Father also testified regarding his work schedule, and the extent to which his employment would prevent him from exercising equally shared physical custody. Father acknowledged that he worked eight hours per day, six days per week, during his marriage to Mother, and that he worked as many as twelve hours per day before the Children were born. N.T., 7/23/18, at 156-157. However, Father testified that he co-owns a business and that his schedule is flexible. *Id.* at 136-37. Father maintained that this flexibility would allow him to exercise increased physical custody without his work schedule posing a problem. *Id.* at 137.[2]

Mother testified on the second day of the hearing. Mother explained that Father worked almost constantly during their marriage, starting at six or

_____

[2] The trial court also heard testimony from Father's brother, B.K., and Father's father, G.K. Both witnesses testified that Father's work schedule is flexible and that they would be available to help babysit the Children if necessary. N.T., 7/24/18, at 3-4, 18-19.

seven in the morning until six or seven at night on average. N.T., 7/24/18, at 43. As an apparent result of this situation, Mother testified that it had always been her responsibility to schedule the Children's activities and medical appointments. *Id.* at 39-40, 42-43, 49. She asserted that Father never showed an interest in scheduling the Children's activities and appointments before, even after their separation, and that he is more interested in co-parenting now than he had been in the past. *Id.* at 42-43, 46-47. Mother conceded that she had scheduled certain activities for the Children without consulting Father. *See*, *e.g.*, *id.* at 66-68 (Mother discussing her decision to sign N.K. up for choir and to have him baptized without consulting Father). Nonetheless, she stated that she makes efforts to keep Father informed regarding the Children. *Id.* at 49, 54-55.

Concerning her desired custody arrangement, Mother testified that she initially had wanted Father's custody time to decrease. N.T., 7/24/18, at 62. Mother provided a somewhat unclear explanation for this preference, stating that she "didn't exactly understand what was going on" and that she "didn't understand the significance of overnights at the time." *Id.* at 87, 94. She explained that equally shared physical custody was now her ultimate goal but she wanted to proceed slowly so that the Children could adjust. *Id.* at 62. Mother expressed support for Dr. Bernstein's recommendation. *Id.* at 63.

Following the hearing, the trial court entered a final custody order on October 2, 2018. The trial court awarded the parties shared legal custody, primary physical custody to Mother, and partial physical custody to Father.

Specifically, the trial court awarded Father partial physical custody every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. The trial court also awarded Father partial physical custody each week from Wednesday after school, or at 3:30 p.m. if there is no school, until Thursday morning at the start of school or at 9:00 a.m. if there is no school. The order provided that Father's custodial weekends in the summer would extend from Thursday at 5:00 p.m. until Sunday at 5:00 p.m.

Father timely filed a notice of appeal on October 29, 2018, along with a concise statement of errors complained of on appeal. He also filed a motion for reconsideration on October 29, 2018, which the trial court granted on the same day. Because the court granted reconsideration within the thirty-day-appeal period, this Court dismissed Father's appeal on November 28, 2018.

Subsequently, on December 13, 2018, Father filed a pleading entitled, "Motion Requesting Entry of Order Regarding Custody," in which he asked the trial court to enter a final order resolving the motion for reconsideration and correcting allegedly conflicting provisions in the holiday schedule set forth in the October 2, 2018 order. The trial court denied Father's motion that same day. Also on December 13, 2018, however, the trial court entered a consent order slightly modifying the October 2, 2018 custody order.[3] The order modified the parties' holiday schedule but made no other changes.

_____

[3] The consent order included a handwritten notation indicating that by consenting to the order, Father was not waiving any reconsideration or appellate rights.

Although the trial court entered its order granting Father's motion for reconsideration on October 29, 2018, it did not address Father's motion until January 31, 2019, when it directed the parties to submit proposed custody orders within ten days. Finally, on February 26, 2019, the court entered a second custody order resolving Father's motion. The order contained legal and physical custody provisions identical to those in the October 2, 2018 order, as well as a modified holiday schedule. Once again, Father timely filed a notice of appeal on March 7, 2019, along with a concise statement of errors complained of on appeal.

Father now presents the following claims for our review:

1. Whether the [t]rial [c]ourt erred in its analysis of the sixteen (16) relevant factors set forth in 23 Pa. C.S. § 5328(a) (1-16) with respect to determining what is in the best interest of the parties' children and in awarding [Mother] primary custody of the [C]hildren, particularly when the [t]rial [c]ourt's order is contrary to the trial court's own analysis that at least eleven (11) of the sixteen (16) factors were either non-applicable or did not favor either party?

[2.] Whether the [t]rial [c]ourt erred in giving great weight to the report offered by [Dr. Bernstein] and then not following Dr. Bernstein's recommendation that Father's physical custody time with the [C]hildren should be increased?

[3.] Whether the [t]rial [c]ourt erred in ruling that Mother should have primary physical custody of the parties' children, with [Father] having partial physical custody of the parties' children pursuant to a schedule that would reduce his total hours of physical custody time with the [C]hildren from the status quo that existed at the time of trial, rather than ruling that the parties share physical custody of the parties' children, when neither party had filed any pleading or made a request for primary physical custody of the [C]hildren and Mother stipulated at trial that Father's physical custody time should not be reduced?

- 7 -

4. Whether the [t]rial [c]ourt erred in reducing Father's overall physical custody time with the parties' children when both parties and Dr. Bernstein were in agreement that it was in the best interest of the parties' children that Father's physical custody time with the [C]hildren should be increased, with the exact amount of the increase in dispute?

5. Whether the [t]rial [c]ourt erred in not awarding Father shared custody of the parties' children when the [t]rial [c]ourt acknowledged on the record during trial that both parties were seeking some type of shared physical custody with the [C]hildren and were just disputing the amount of day [*sic*] for the shared custody arrangement?

6. Whether the [t]rial [c]ourt erred in its finding under analysis of 23 Pa. C.S. § 5328(a)(12) that Father presented no evidence of childcare when Father would be working when Father and two other witnesses testified with respect to childcare available to Father and Father directly answered childcare questions posed by the [t]rial [c]ourt?

7. Whether the [t]rial [c]ourt erred in finding that Father did not have availability with his work schedule to warrant shared physical custody time with the parties' children?

Father's Brief at 7-9.[4]

We review Father's claims mindful of the following standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial

_____

[4] We have reordered Father's issues for ease of disposition.

- 8 -

court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that trial courts must consider when awarding custody are set forth at 23 Pa.C.S. § 5328(a):

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence

where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Father first argues that the trial court erred in its analysis of the Section 5328(a) factors with respect to determining the best interests of the Children, and in awarding Mother primary physical custody. Father's Brief at 20. Father maintains that the trial court's order is contrary to its analysis that at least eleven of the sixteen factors were either not applicable or did not favor either party. *Id.* Father also challenges the court's findings that the remaining factors weighed in favor of Mother, focusing on Sections 5328(a)(4), (5), (9) and (16). *Id.* at 22-26. In essence, Father contends that it was unreasonable

for the trial court to conclude that an award of primary physical custody to Mother would provide the Children with greater stability. *Id.* at 22. Father directs our attention to Dr. Bernstein's report, which he asserts demonstrates Father's stability and compels an increase in his physical custody time. *Id.* at 23.

In its opinion filed June 12, 2019, the trial court set forth findings of fact regarding all[5] of the Section 5328(a) factors. The trial court found that most of the factors were neutral, and concluded that factors (4), (9), (12), and (16) weighed in Mother's favor. Trial Court Opinion, 6/12/19, at 4-7. In conducting its analysis, the trial court placed particular weight on Dr. Bernstein's recommendation and the Children's need for stability. *Id.* at 3, 5. As the trial court stated: "Dr. Bernstein opined to a reasonable degree of professional certainty that Mother should maintain primary physical custody, with Father exercising partial custody every other weekend from Friday through Sunday plus one overnight per week. The [c]ourt finds Dr. Bernstein's opinion to be solidly based and gives it great weight." *Id.* at 3.

The court also emphasized that it found portions of Father's testimony incredible. Most notably, the court rejected Father's testimony regarding his availability and that he would be able to adjust his work schedule in order to

_____

[5] The trial court did not provide a separate analysis of Section 5328(a)(2.1). However, the parties presented no evidence or claims of abuse relevant to that factor during the hearing.

accommodate an equally shared physical custody schedule. Trial Court Opinion, 6/12/19, at 1, 6. The court's discussion of Section 5328(a)(16) is illustrative of its reasoning:

> The [c]ourt notes that Father has become more active in the regular routines and decision making for [the] Children. The [c]ourt encourages both Mother and Father to put aside their personal differences and work together in raising their children. Both Mother and Father are encouraged to participate in educational, medical, religious, and extra-curricular activities of [the] Children. Hopefully, they will do so not with an attitude of splitting everything 50/50, but with an attitude of harmony in meeting [the] Children's best interests. The [c]ourt recognizes that the [C]hildren benefit financially, socially, and emotionally from Father's work and entrepreneurship. Father should be rewarded for how he cares for his family. However, Father also needs to appreciate that the ultimate relationship he builds with [the] Children will come from a sincere desire to participate in and influence their lives rather than a mathematical formula of hours spent with physical custody.

> The [c]ourt gave weight to Dr. Bernstein's opinion as well as Father's lack of credibility. Father's strong desire to have pure 50/50 custody caused him to be inconsistent in his testimony and often place Mother in a light more negative than the facts supported.

*Id.* at 6-7.

Our review of the record supports the trial court's decision. As detailed above, the Children have remained in Mother's primary physical custody since the parties separated. Prior to the parties' separation, Mother served as the Children's primary caretaker due to Father's demanding work schedule. Further, the evidence supported the trial court's conclusion that Father's availability for additional custodial time was questionable. Therefore, it was reasonable for the court to conclude that an award of primary physical custody

to Mother with a gradual increase to Father's custody over time would best promote the Children's stability. While Father attempted to argue during the custody hearing that an immediate increase in his physical custody would provide the Children with stability, it was within the court's discretion to reject Father's testimony. *V.B.*, 55 A.3d at 1197.

Dr. Bernstein's testimony and report also support the trial court's findings. Dr. Bernstein opined that one of the most critical factors in this case was the Children's need for stability, especially in light of reports that they were displaying increased agitation and insecurity at the time of custody exchanges. N.T., 7/23/18, at 23-24, 27-28. Thus, Dr. Bernstein recommended that Father maintain his existing award of custody with a potential increase in time after a few months. The court followed that recommendation in its order of February 26, 2019, with slight adjustments, by providing Father with his usual four overnights every two weeks during the school year, as well as an additional overnight every two weeks during the summer.

In his interrelated second claim, Father argues that the trial court erred by stating that it was giving great weight to Dr. Bernstein's report, but then failing to follow the recommendation in the report that Father should receive increased physical custody. Father's Brief at 34. Father maintains that Dr. Bernstein's report recommended an increase to his physical custody time after a short transitional period. *Id.* at 36. He contends that the court essentially

- 13 -

rejected Dr. Bernstein's recommendation by reducing his custody "when viewed on an hourly basis[.]" **Id.**

It is important to note that the trial court was not obligated to follow Dr. Bernstein's exact custody recommendation. **See M.A.T. v. G.S.T.**, 989 A.2d 11, 20 (Pa. Super. 2010) ("[W]hile a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record."). It was permissible for the court to decline to follow the recommendation, or to follow the recommendation in part, while also weighing other considerations or evidence presented during the hearing. In addition, Dr. Bernstein did not provide a detailed custody recommendation for the court to follow. Dr. Bernstein provided his recommendation only in general terms, without detailing the precise amounts of time that Father should exercise custody. N.T., 7/23/18, at 23.

Significantly, contrary to Father's contentions, Dr. Bernstein did not recommend that the trial court increase Father's custody time after a transitional period. Rather, he recommended that the court leave any expansion of Father's custody time to the discretion of the parties, who should "consider" adding an additional overnight after a few months. N.T., 7/23/18, at 23; **see also** Custody Evaluation, 3/29/18, at 18 ("In a few months, I support [Mother] and [Father] increasing [Father's] evening to an

overnight."). Accordingly, by awarding Father expanded custody during the summer, the court actually went further than Dr. Bernstein recommended. Given the court's discretion to weigh Dr. Bernstein's recommendation alongside other relevant evidence and the general nature of that recommendation, we discern no abuse of discretion.

Because they are interrelated, we shall address Father's next three issues together. In his third claim, Father argues that the trial court erred by awarding Mother primary physical custody of the Children when she never requested any more than shared physical custody. Father's Brief at 27. Father maintains that Mother did not file a counterclaim requesting primary physical custody and that she did not request primary physical custody during the hearing. *Id.* To the contrary, Father asserts, Mother was in agreement with increasing his custody time, and that the court "erred by substituting its own opinion against the parties' wishes." *Id.* at 27, 30. Father also spends a substantial portion of this claim arguing that the trial court improperly characterized its award of physical custody as "shared" rather than "partial." *Id.* at 28-29.

In the interrelated fourth claim, Father argues that the trial court erred by reducing his custody with the Children when both Dr. Bernstein and Mother agreed that an increase in Father's custody would be in the Children's best interests. Father's Brief at 37. Father maintains that the court's custody award would be contrary to the Children's best interests because it reduces

his custody by four hours each custodial weekend and results in the Children not seeing him for up to seven straight days at a time. *Id.* at 38. In addition, Father largely repeats his previous argument, asserting that Mother "stipulated" his custody time should not be reduced, and that she agreed to an increase in his custody time during the hearing. *Id.* at 38-39.

Father's fifth claim is largely identical to his third and fourth claims. Father maintains once again that he, Mother, and Dr. Bernstein all agreed that his physical custody of the Children should increase. Father's Brief at 39-40. Father further insists that even the court "acknowledged on the record that the parties were arguing over some form of shared custody and . . . solely disputing the amount of days." *Id.* at 40.

Father's argument finds no support in our law. The Pennsylvania Rules of Civil Procedure provide that the parties in a custody dispute may enter into an agreement, and then present that agreement for the trial court to enter as a final order. *See* Pa.R.C.P. 1915.7 ("If an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel."). That did not happen here. Mother and Father were unable to reach a mutually agreeable custody schedule, leaving it to the court to fashion an award that it believed was in the Children's best interests.

Furthermore, contrary to Father's contentions, our law does not mandate that the trial court may fashion a custody award only based on the relief requested in the parties' pleadings. Indeed, even when the parties reach an agreement regarding custody, it is clear that a court may set aside that agreement if it would be contrary to the children's best interests. **See Huss v. Weaver**, 134 A.3d 449, 455 (Pa. Super. 2016) ("Because children are not mere chattel, agreements regarding custody and visitation are always subject to court review and adjustment in the best interests of the child.").

In rejecting Father's arguments, we also observe that he misconstrues the relevant portions of the record. Mother did not stipulate that the trial court should not reduce Father's physical custody. Mother's counsel stipulated merely that counsel had not filed a pleading requesting that the trial court reduce Father's physical custody. **See** N.T., 7/24/18, at 86 ("If you like, [Father's counsel], I can stipulate that my client didn't file a pleading asking for a reduction in your client's time."). As we have already established, this was not a controlling consideration for the court. Moreover, the record contradicts Father's assertion that Mother never requested a reduction in Father's custody time. Mother filed a pretrial narrative statement on March 19, 2018, in which she requested that the trial court eliminate two of Father's four overnight periods of custody during each two-week period and replace them with two evenings each week. Father's counsel cross-examined both Mother and Dr. Bernstein about this request during the hearing. **See id.** at

- 17 -

87 ("In that [p]re-[t]rial [n]arrative statement, are you proposing that [Father's] physical custody time with the [C]hildren be reduced from the eight nights [per month, approximately,] that he had?"); N.T., 7/23/18, at 42 ("Are you aware that, at least in the pleadings filed in this case, that [Mother] is asking that overnights be taken away from [Father]?").

Furthermore, the trial court relied on the recommendations of Dr. Bernstein, which stated that any increase in custodial time for Father should occur gradually. Accordingly, the trial court did not err or abuse its discretion in its award of physical custody of the Children to the parties. Father is entitled to no relief on these claims.

Father's remaining two issues are related, and accordingly, we shall address them together. In his sixth claim, Father argues that the trial court erred in its analysis of Section 5328(a)(12), regarding Father's ability to provide appropriate childcare. Father's Brief at 42. Father contends that the trial court concluded improperly that he failed to present evidence of childcare during the hearing, when in fact he presented evidence from several sources. *Id.* Father asserts that he "audibly provided evidence" of childcare arrangements through his own testimony regarding a possible daycare for the Children, and that both his father and brother testified that they were available to babysit. *Id.* at 42-44. Father also maintains that his work schedule is flexible, such that childcare would not be necessary in the event he received increased custody. *Id.* at 42-43.

- 18 -

In his related seventh claim, Father argues that the trial court erred by finding that his work schedule impairs his ability to exercise shared physical custody of the Children. Father's Brief at 45. Father acknowledges that the trial court found Father's testimony regarding his availability and flexible work schedule incredible. *Id.* However, Father contends that this Court should reject that credibility finding as unreasonable. *Id.* In support of this assertion, Father directs our attention to his testimony during the hearing, as well as the testimony of his father and brother, and a statement in Dr. Bernstein's report that Father "adjusts his work schedule and is available for his sons." *Id.* at 45-47. Father contends that the court likely based its credibility finding on his work schedule prior to the parties' separation, which he argues is irrelevant, and on the fact that he increased his desired custody award by one overnight per month during the pendency of the custody proceeding. *Id.* at 47-48. Father asserts that this increase was merely a slight discrepancy, and that only a much greater change in Father's desired custody award should have impacted his credibility. *Id.* at 48.

As we have stated, the trial court's credibility findings are binding on this Court when the record supports them. *V.B.*, 55 A.3d at 1193. The record supports the court's findings here, so we may not disturb them. Specifically, the trial court explained:

> Noting Father's testimony, he did not provide any other scenario for child care other than himself not working. Additionally, as to the amount of time Father spends working for his company as a co-owner, the [c]ourt did not find Father

credible, rather the [c]ourt found Mother credible as to the amount of time Father devotes to his company.

Father's brother and co-owner of the business proffered that Father could be flexible and "make up his own schedule". He also testified that he could be a babysitter because the two brothers live on adjoining properties. He did not testify that he could provide child care during Father's working hours. He did not testify that Father could work less hours, simply that he had flexibility. [Father's older brother] testified that he works 50 hours per week. Again, he did not testify that he could add additional hours or work responsibilities to make up for Father's absence on a regular and continued basis, but rather he stressed that he and Father could have a "flexible" schedule.

Trial Court Opinion, 6/12/19, at 18-19 (emphasis in original) (internal citations omitted).

Furthermore, the trial court heard testimony during the hearing indicating that Father had not been consistent regarding his desired custody award and his ability to make that award possible in light of his work schedule. Dr. Bernstein testified that Father's initial proposal during the custody evaluation was that he share physical custody of the Children equally, but then, "in some type of retrospect realized his work schedule perhaps would be an obstacle." N.T., 7/23/18, at 19. Father then proposed having physical custody of the Children forty-seven percent of the time. *Id.* According to Dr. Bernstein, Father "stated that . . . equal custody would not be ideal for him based on his work schedule" and he "was not specifically asking [for] 50-50 in this evaluation." *Id.* at 27, 86.

Father, however, testified at the hearing that his work schedule would pose no problem to an equally shared physical-custody arrangement. N.T.,

7/23/18, at 137-39.  Father denied at first that he told Dr. Bernstein his work schedule would prevent an award of equally shared physical custody, stating that he "told him that the 47 percent that I proposed wasn't quite 50-50 .... And I said, I work around my work schedule and stuff.  But I can do 50-50. And . . . that's what he construed from that." *Id.* at 157.  Father continued, "I may have said to him that the reason why I'm at the 47 percent is because it just gives that little bit of room there if needed to be.  [*sic*] But I don't really recall saying that it was an obstacle to 50-50 because it's just not." *Id.*

Father later appeared to concede that he had informed Dr. Bernstein his work schedule would prevent equally shared physical custody, but that he had since adjusted his work schedule so that it would no longer pose a problem. Father testified as follows:

> Q.  Why is the scenario that you are presenting today different than the one that you suggested to Dr. Bernstein?
>
> A.  Because I found out with having the eight overnights, and after re-looking at different things and making business decisions and management changes and slowing things down a little bit more, I am able to achieve a 50 percent.  So I have had a change in work load and different things in my life.  I'm able to do that now.
>
> Q.  Okay.  Thank you.  So, I just -- I want to -- I don't want to put words in your mouth, so you correct me if I'm wrong.  In the evaluation you did suggest that you should have something less than truly 50-50.  But now you're saying you fixed things since then and you can do it.  Is that a fair statement?
>
> A.  Sure, yes.

N.T., 7/23/18, at 160.

He further testified:

Q. Now, your testimony here is, to [the trial court], that previously when you were talking to Dr. Bernstein, you said, you know, ["]Pretty busy; 50-50 might not work.["] But now you're saying it will?

A. Yes.

*Id.* at 202.

This was not the only testimony that may have caused the trial court to question Father's credibility. For example, Dr. Bernstein testified that Father's psychological testing during the custody evaluation produced three elevated validity scales. N.T., 7/23/18, at 12. He explained that these elevated scales indicate that Father "made a seeming attempt . . . to present in a more favorable light" during the evaluation. *Id.* Dr. Bernstein also agreed that Father's elevated scales suggest that he had been "less than candid" during the evaluation. *Id.* at 14. He noted that, had Father approached the evaluation "in an open and candid manner, [his] clinical scales would likely be more elevated and would give a more accurate representation of who he is and how he was functioning at the time." *Id.* at 13. Mother, on the other hand, produced no elevated validity scales. *Id.* at 10. Thus, the trial court was provided with no credible evidence that Father was prepared to deal with childcare and demands of his work schedule in an arrangement where he would have increased physical custody of the Children. Accordingly, we see no basis to reject the court's credibility findings, and as a result, no relief is due.

Based on the foregoing, we conclude that the trial court did not abuse its discretion or commit an error of law by awarding primary physical custody of the Children to Mother and awarding Father partial physical custody.  Thus, we affirm the court's February 26, 2019 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2019