J-A17004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RANDY SCHOCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISETTE PEREZ | : | |
| | : | |
| Appellant | : | No. 569 EDA 2022 |

Appeal from the Order Entered February 14, 2022
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2016-62078

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED OCTOBER 7, 2022**

Lisette Perez ("Mother") appeals from the February 14, 2022 order holding her in contempt for failure to comply with a previous custody order issued on May 24, 2021. After careful review, we affirm.

Given our disposition of this appeal, we need not dwell on the extensive factual and procedural background. We merely note that Mother and Randy Schoch ("Father") have been engaged in protracted litigation over the custody of their natural child ("Child"), who was born in 2011. The primary source of dispute arises from the fact that Father is estranged from Child and is seeking to establish a relationship. Mother strenuously objects to any effort that furthers Father's goal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

After several rounds of failed attempts at fostering a relationship between Father and Child, the trial court held a hearing on March 16, 2021. Following that hearing, the court docketed a "Domestic Court Sheet" with a written "interim order" holding Mother in contempt and listing requirements for Child's therapy as well as Mother and Father's separate therapies. **See** Domestic Court Sheet, 3/16/21. Mother filed an appeal from this docket entry on April 4, 2021, which this Court docketed at 799 EDA 2021. In the concise statement of errors complained of on appeal Mother attached to the notice, she raised 18 issues, including challenges to the finding of contempt as well as challenges to the modification of the custody orders.

This Court subsequently issued an order finding that the "Domestic Court Sheet" was not a proper order and directed the trial court to file a proper order that included "the entire disposition from the March 16, 2021 hearing." **Schoch v. Perez**, 799 EDA 2021 (Pa. Super. filed May 10, 2021) (unpublished order). The order further noted that the appeal, "filed prior to the entry of the March 16, 2021 order on the docket, will be treated as timely filed." **Id.** (citing Pa.R.A.P. 905(a)(5).[1]

_____

[1] While the March 16, 2021 order is described as an "interim order," and therefore interlocutory, it was final as to the trial court's finding of contempt and imposition of a sanction upon Mother. **See In re. C.W.**, 960 A.2d 458, 460 n.1 (Pa. Super. 2008). And while the trial court suspended its sanction of 30 days' incarceration, it immediately awarded Father attorney's fees in conjunction with its finding of contempt.

Our Rules of Appellate Procedure state that once "an appeal is taken … the trial court … may no longer proceed further in the matter." Pa.R.A.P. 1701(a). This Court has held that the stay imposed by Rule 1701 deprives the trial court of its jurisdiction to proceed further in the matter after an appeal has been filed. **See In re J.A.**, 107 A.3d 799, 809 (Pa. Super. 2015).[2] In turn, "an action taken by a court without jurisdiction is a nullity." **Mischenko v. Gowton**, 453 A.2d 658, 660 (Pa. Super. 1982). While a trial court has the power to take certain explicitly delineated actions after an appeal has been filed, a "major substantive change, such as the total withdrawal of an order relative to a motion of record" does not qualify as an exception to Rule 1701(a)'s stay. **Manack v. Sandlin**, 812 A.2d 676, 682 (Pa. Super. 2002). Additionally, a trial court may not discontinue a case "until [it receives] proper notice that all appeals pending in this Court have been discontinued." **Estate of Paterno v. National College Athletic Association (NCAA)**, 168 A.3d 187, 202-03 (Pa. Super. 2017).

---

[2] The **J.A.** panel held that dependency courts retain jurisdiction, despite Rule 1701, for further action taken in the best interest of the dependent child. **See id**., at 809 (citing 42 Pa.C.S.A. § 6351). We take no position on whether the same policy considerations apply in custody matters, as the issue is not squarely before us and has not been briefed by the parties. While some of the issues raised in Mother's appeal docketed at 799 EDA 2021 could be classified as concerning the best interests of Child, many are not clearly relevant to Child's best interests and concern issues related to an indirect criminal contempt of PFA proceeding initiated by Mother's allegations that Father knowingly violated a temporary PFA order by contacting her about custody issues pursuant to the existing custody order. The trial court here found that Mother had misled Philadelphia authorities about service of the PFA order.

On May 24, 2021, the parties appeared before the trial court with a proposed stipulated order to settle the case. Of direct relevance to our present disposition, the stipulated order directed Mother to withdraw her appeal at 799 EDA 2021 within five days. Further, the order vacated all prior orders in this matter except for certain provisions of a September 23, 2020 order. Finally, the order indicates that it "resolves all pending matters before this Court." Upon the praecipe of Mother's counsel, this Court discontinued the 799 EDA 2021 appeal on May 25, 2021.

This Court did not discontinue the appeal at 799 EDA 2021 until May 25, 2021. Under Pa.R.A.P. 1701, the trial court was without jurisdiction to enter the May 24, 2021 order. **See In re J.A.**, 107 A.3d at 809. As such, the May 24, 2021 order is a nullity. **See Mischenko**, 453 A.2d at 660.

As noted at the start, this appeal concerns a subsequent order finding Mother in contempt of the May 24, 2021 order. We review a contempt order for an abuse of discretion. **See Orfield v. Weindel**, 52 A.3d 275, 278 (Pa. Super. 2012). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." **Id**. (citations omitted). "It is impossible to hold someone in contempt of an order that does not exist." **Kuppel v. Auman**, 529 A.2d 29, 31 (Pa. Super. 1987). Given that the May 24, 2021 order is a nullity, it was "impossible" for the trial court to find Mother in contempt of that order.

- 4 -

However, while the trial court could not find Mother in contempt of the May 24, 2021 order, it does have the power to find Mother in contempt of the May 24, 2021 stipulation between the parties on those issues that directly pertained to the best interests of Child. **See Huss v. Weaver**, 134 A.3d 449, 455 (Pa. Super. 2016) (*en banc*) (holding that while custody agreements do not bind a court, a court may enforce the agreement if the agreement is consonant with the best interests of the child). In contrast, the trial court has no contempt power to enforce portions of the agreement that relate solely to disputes between the parents.

The February 14, 2022 order does not explicitly set forth the portions of the May 24, 2021 order the court found that Mother willfully violated. In its opinion on appeal, however, the trial court does specify that the contempt finding is based solely on Mother's failure to ensure Child's participation in therapy. **See** Trial Court Opinion, 3/18/22, at 15.[3] Further, the hearings on Father's contempt petition focused almost exclusively on Mother's compliance with the requirement for Child to participate in therapy with a goal towards reunification with Father.

Since the May 24, 2021 order is, in fact, identical to the May 24, 2021 stipulated agreement between the parties, we see no due process violation

---

[3] We note that the March 16, 2021 "interim order" also required Mother to ensure Child's participation in therapy with the goal of eventual reunification with Father.

inherent in the trial court enforcing the stipulation rather than the order. Additionally, while the May 24, 2021 order is a nullity, Mother has never challenged the validity of the underlying stipulation and has acknowledged its authority.

Under these circumstances, the improper entry of the May 24, 2021 order constitutes a mere technical mis-step. The stipulation and the order are identical in terms, and analysis of the stipulation is the same as analysis of the order. In the interest of judicial economy, we treat the trial court's finding of contempt as based on the stipulation. Similarly, Mother's arguments against the order work equally as well as arguments against the terms of the stipulation.

And, after reviewing Mother's arguments on appeal, we conclude that the thorough opinion entered by the trial court adequately addresses Mother's issues. We therefore adopt the trial court's reasoning as our own. *See* Trial Court Opinion, 3/18/22, at 10-27 (opining that Mother's repeated failures to ensure Child's participation in therapy, combined with her shifting rationales for such failures, and testimony of Child's service providers, supported a finding that Mother willfully disregarded the requirement to ensure Child's participation; concluding that the court did not abuse its discretion in preventing Child's therapist from testifying, where the therapist objected to testifying absent Father's consent to her testimony; finding Mother's hearsay issue waived for failing to specify in her Rule 1925(b) statement the testimony

and documents at issue; noting that the only basis for the finding of contempt was Mother's failure to ensure Child participated in therapy; opining that the court was not required to assess Mother's ability to pay the attorney's fees sanction prior to attempting to enforce the sanction; and noting the multiple deficiencies in the mental health evaluation performed while Mother was imprisoned).

In her brief, Mother also argues that the trial court imposed an unconstitutional "gag order" when it directed Mother and her family to refrain from discussing Mother's incarceration with Child. The trial court does not address this argument, because this argument is not fairly suggested by Mother's Rule 1925(b) statement. This issue is therefore waived as well. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that issues not raised in a 1925(b) statement are waived).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2022



Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E-Filed by: Stacey Allen

## IN THE COURT OF COMMON PLEAS, BUCKS COUNTY PENNSYLVANIA
### FAMILY LAW DIVISION

RANDY SCHOCH
    Plaintiff/Appellee

:      No. 2016-62079

v.

LISETTE PEREZ
    Defendant/Appellant

## OPINION

Defendant/Appellant, Lisette Perez (hereinafter "Appellant"), filed a fast-track Appeal from this Court's February 14, 2022 Order, which found Appellant in contempt of this Court's May 24, 2021 Order. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) in support of the Court's Order.

## I.    FACTUAL AND PROCEDURAL HISTORY

Appellant and Randy Schoch (hereinafter "Appellee") are the natural parents of minor child K.P. (hereinafter "the Child"), born on March 25, 2011. The parties were never married. Appellant is 26 years old and has two other minor children. Appellant is employed at Bayada as a certified medical technician. Appellee is 28 years old and has been married to his current, wife, Alison Schoch, since August of 2021. They have one minor son together. Appellant and Mrs. Schoch live together, along with Mrs. Schoch's minor daughter and their minor son.

On January 25, 2018, Appellant filed a Complaint in Custody requesting sole legal and physical custody of the Child.[1] A Hearing was held on September 18, 2018. On September 25, 2018, the Court

---

[1] Appellee originally filed a Complaint for Custody and Petition to Proceed *In Forma Pauperis* on October 26, 2016. The Petition to Proceed *In Forma Pauperis* was denied on November 1, 2016. The case was stricken for failure to pay the filing fee on December 5, 2016. On April 19, 2017, Appellee again filed a Complaint for Custody of the child. Appellant filed an Answer and Counterclaim on May 19, 2017 which were then withdrawn on May 30, 2017. On June 2, 2017, an Order was entered dismissing the April 19, 2017 Custody Petition filed by Appellee because of his failure to appear.

- 1 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E-Filed by: Stacey Allen

entered a Custody Order giving Appellant sole legal custody and primary physical custody of the Child pending the recommendation of a reunification counselor, as both parties were ordered to "participate fully in reunification counseling and any and all counseling sessions, in a timely manner." *Custody Order*, 09/25/2018. On July 10, 2020, Appellee filed a Petition to Modify, wherein he alleged that Appellant had failed to comply with the September 25, 2018 Custody Order because reunification counseling had yet to be completed. *Petition to Modify Custody Order*, 07/10/2020, ¶¶ 5-7.

On August 3, 2020, Appellant filed an Answer to Appellee's Petition, asking the Court to deny Appellee's Petition to Modify.[2] On September 17, 2020, this Court held a hearing on Appellee's Petition, and the parties reached an agreement. The terms of the agreement were placed on the record as an Interim Order that day, and this Court entered a written Interim Order on September 23, 2020. *See Interim Custody Order*, 09/23/2020. Pursuant to that Interim Order, the parties were given shared legal custody, Appellant was given primary physical custody, and Appellee was given partial physical custody subject to his compliance with reunification counseling and good behavior during four supervised visits between Appellee and the Child. *Id.* at ¶¶ 4-5. Reunification therapy with Appellee and the Child was to begin the week of September 20, 2020. *Id.* at ¶ 5. Additionally, Appellee and Appellant were ordered to attend individual weekly therapy sessions and the Child was required to continue individual therapy sessions. *Id.* at ¶ 6.

On October 27, 2020, Appellant filed a Petition to Modify the September 23, 2020 Order on the basis that reunification therapy was not going well. *Defendant's Petition to Modify Custody Order*, 10/27/2020. On November 12, 2020, after request and agreement by counsel, a status conference was held with this Court, based on the allegations within Appellant's October 27, 2020 "Petition to Modify." This Court then entered a Supplemental Order on December 1, 2020 enforcing and

---

[2] Appellee filed a Motion for Attorneys' Fees on September 14, 2020 and Appellant filed both an Answer and a Motion to Strike Exhibit B in the Motion for Attorneys' Fees on September 16, 2020. Both parties withdrew their Motions for Attorneys' Fees in the September 23, 2020 Interim Order.

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

clarifying the prior September 25, 2018 Order and the September 23, 2020 Interim Order.[3] *Order*, 12/01/2020. The December 1, 2020 Order required the Child to engage in individual therapy at the Children's Crisis Treatment Center within two weeks of the date of the Order. *Id.* After the Child had had two individual therapy sessions, reunification therapy was to recommence. *Id.* The Order also required Appellant to withdraw her Petition for Modification without prejudice within seven days of the Order, which she had agreed to do in exchange for Appellee's agreement not to file a Motion for Contempt against her. *Id.* at p. 3.

On December 17, 2020, Appellee filed another Petition to Modify the Custody Order and Petition for Contempt, alleging that Appellant failed to reach out to the Children's Crisis Treatment Center, and that it was only through his own contact with the Center that he learned the Child could not be seen there, as he was not a resident of Philadelphia. *Petition For Civil Contempt for Disobedience of Custody Order*, 12/17/2020, ¶ 2(a). At the request of counsel for both parties, this Court once again conducted another conference call with the parties' counsel on December 21, 2020. On December 23, 2020, this Court entered an Order enforcing, yet again, the Orders dated September 25, 2018, September 23, 2020, and December 1, 2020.

The December 23, 2020 Order additionally directed Appellant to schedule an individual therapy appointment for the Child by December 28, 2020 and required it take place prior to January 4, 2021. *Order*, 12/23/2020, ¶¶ 1-2. If Appellant failed to comply with the December 23, 2020 Order, Appellee would receive sole legal custody over the Child's mental health decisions. *Id.* at ¶ 2. Additionally, reunification therapy was Ordered to occur at the first agreed upon time after January 4, 2021 and, if not by January 12, 2021, Appellant would be responsible for the reunification therapy

---

[3] The proposed Order for signature was prepared and submitted to the Court by Appellant's counsel, with commentary by Appellee's counsel. Counsel disagreed on one provision and left it to the discretion of the Court to decide, but all other terms of the December 1, 2020 Order were approved and submitted by counsel for both parties. *See Petition to Reconsider in the Nature of Petition to Modify*, 01/07/2021 (detailing the history of the December 1, 2020 Order).

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

costs. *Id.* at ¶ 3. Finally, the parties were ordered to timely communicate with one another regarding therapy for the child, reunification therapy, or other legal custody issues. *Id.* at ¶ 4.

On January 7, 2021, Appellant filed a Petition to Reconsider, in which she claimed that this Court had punished her for matters beyond her control. *Petition to Reconsider In the Nature of a Petition to Modify the Custody Order of December 23, 2020*, 01/07/2021, ¶ 13. On March 2, 2021, this Court held a hearing on Appellee's Petition for Contempt and Appellant's Petition to Reconsider, and this hearing was continued to March 16, 2021. Additionally, the Child was interviewed *in camera* on March 9, 2021. On March 16, 2021, this Court entered an Interim Order finding Appellant in contempt of the December 23, 2020 Order due to her noncompliance with the Order's explicit therapy provisions. *Interim Order*, 03/16/2021; N.T. 03/16/2021, p. 23. Appellant was sentenced to a suspended thirty (30) days at Bucks County Correctional Facility (hereinafter "BCCF"), in addition to paying Appellee's attorneys' fees. *Interim Order*, 03/16/2021.

Regarding the Modification Petitions, this Court Ordered that reunification therapy commence immediately with therapist Ms. Nell Bowers (hereinafter "Ms. Bowers"), with the parties jointly attending at least three sessions before the minor child began to attend. *Id.* The parties were also ordered to each seek individual therapy and the Child was required to begin individual therapy with a professional skilled in reality therapy. *Id.* Legal custody was not changed with the March 16, 2021 Interim Order. *Id.*

On April 7, 2021, Appellee filed a Petition for Civil Contempt for Disobedience of Custody Order and a Counter-Affidavit Regarding Location, wherein he alleged that in addition to refusing to cooperate in reunification therapy, Appellant had relocated to Philadelphia and transferred the Child to the Philadelphia School District without informing Appellee (who maintained shared legal custody) or petitioning this Court for permission to do so. *Petition For Civil Contempt for Disobedience of Custody Order*, 04/07/2021, ¶ 2(a)-(b); *Counter-Affidavit Regarding Location*, 04/07/2021, ¶ 3 (objecting to

- 4 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

Appellant's relocation). On April 14, 2021, Appellant finally filed her Petition for Relocation, as well as her Answer to Appellee's Contempt Petition. *Defendant's Petition for Relocation*, 04/14/2021; *Defendant's Answer Petition for Contempt and Petition to Modify Custody Order*, 04/14/2021.

Conveniently, that same day of April 14, 2021, Appellant also filed a Notice of Appeal as to this Court's March 16, 2021 Order and a "concise" 1925(b) Statement of Matters Complained of, in which she claimed that this Court had erred eighteen times, from Ordering that the Child attend therapy to finding Appellant in contempt. *Concise Statement of Errors Complained of on Appeal*, 04/14/2021. On April 22, 2021, this Court conferenced this case with the parties' counsel and modified the March 16, 2021 Order to specify and clarify the Child's individual and reunification therapy appointments. *Court Sheet*, 04/22/2021.[4] This Order also provided that Appellee would receive sole physical custody of the Child if Appellant failed to comply with this Order. *Id.*

Meanwhile, on May 4, 2021, Appellant obtained a Temporary Protection from Abuse Order (hereinafter "Temp. PFA") in Philadelphia County against Appellee. Subsequently, on May 9, 2021, Appellant called the Philadelphia Police, claiming that Appellee had been contacting her via email and on the court-ordered communication platform AppClose, in violation of the Temp. PFA. The Philadelphia Police then issued an arrest warrant for Appellee for violating the May 4, 2021 Temp. PFA. Appellee was only served with the Temp. PFA documentation by the Bucks County Sheriff's Department on May 10, 2021. *Exhibit F-14.*

After a hearing on May 12, 2021, this Court entered an Interim Custody Order on May 17, 2021 which directed the parties to communicate via AppClose as to all relevant custody issues pertaining to the Child regardless of the status of the pending Temp. PFA. *Interim Custody Order*, 05/17/2021, ¶ 5. This Interim Order also provided that Appellant was to send Appellee a list of the Child's favorite things and pictures of the Child by May 14, 2021, and prohibited the parties from

---

[4] Al of the these terms were reduced to a written Interim Order on May 17, 2021. *See Interim Custody Order*, 05/17/2021.

attaching, referencing, or admitting the reports/summaries from any professionals providing services to the parties or the Child in any pleading that was not in custody. *Id.* at ¶¶ 6-8.

On May 24, 2021, this Court issued an Order (hereinafter "Agreed-Upon Order") approving the parties' Joint Stipulation (entered into that same day), in which they agreed that Appellant would withdraw her April 14, 2021 appeal and would maintain sole physical custody of the Child. *Agreed-Upon Order*, 05/24/2021, ¶¶ 1, 7. The parties further agreed that Appellee would withdraw his pending petition for contempt against Appellant with prejudice, and that he would also withdraw his petition to modify (without prejudice). *Id.* at ¶¶ 2-3.

Furthermore, Appellant was to withdraw the Temp. PFA within five (5) days of the Agreed-Upon Order. *Id.* at ¶ 6. The parties would share legal custody of the Child,[5] and Appellant was to notify Appellee if the Child ever expressed an interest in reunifying with Appellee. *Id.* at ¶¶ 8-9. If the Child expressed interest, the parties would, if appropriate, reestablish reunification counseling. *Id.* at ¶ 9. The parties were to communicate via AppClose and Appellee could write one letter to the Child monthly. *Id.* at ¶¶ 10, 15. Appellant was to ensure that the Child read each letter. *Id.* at ¶ 15. The parties further agreed that all prior Orders of this Court were to be vacated but for a few provisions of this Court's September 23, 2020 Order, of which pertain to the unpaid counsel fees, the identity of the Child, and the parties sharing legal custody. *Id.* at ¶ 11. Finally, the parties explicitly agreed that the Child was to remain in therapy and attend bi-monthly sessions at Bethanna Behavioral Health Services (hereinafter "Bethanna"). *Id.* at ¶ 16.

---

[5] Specifically, the Agreed-Upon Order states that Appellant was to: (1) maintain Appellee as "Father" on all legal documents as it pertains to the Child, including school and medical providers; (2) inform Appellee via AppClose of any emergencies (schooling, medical, etc.); (3) send Appellee, via AppClose, updates of any milestones, sports involvement, special events, grades, etc.; (4) send Appellee the occasional picture of the Child every two months (including but not limited to school events and special occasions); and (5) send Appellee a written report every two weeks with regard to the Child's schooling. *Agreed-Upon Order*, 05/24/2021, ¶ 8.

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

On June 4, 2021, the Philadelphia Municipal Court held a hearing on Appellant's Petition to Vacate the Temp. PFA, where she withdrew her petition without prejudice. *Exhibit M-2*. However, on July 24, 2021, Appellee was stopped and arrested by the Dublin State Police at a traffic stop pursuant to the May 9, 2021 arrest warrant for Witness Intimidation.[6] Appellee was released within a few hours of his arrest, and on July 28, 2021, Appellee turned himself in to the Northeast Detective Division of the Philadelphia Police. On July 29, 2021, Appellee was released on a $15,000 bail agreement.

On October 31, 2021, Appellee filed another Petition for Contempt, in which he alleged that Appellant: (1) had refused to cooperate in ensuring that the Child was in therapy; and (2) had not withdrawn her PFA in Philadelphia according to the terms of the Agreed-Upon Order, especially in light of the added Witness Intimidation charges. On December 9, 2021, Appellant filed her Answer to Appellee's Petition for Contempt, alleging that Appellee created "a hostile environment with each therapist such that they are unable or unwilling to engage in further therapy," and that "the [C]hild is being harmed by the process and further required therapy is detrimental to him." *Answer to Petition for Contempt*, 12/09/2021, ¶ 4.

On January 10, 2022, Appellant filed a Motion to Appoint a Guardian *Ad Litem*, arguing that such an appointment would "provide this Honorable Court with a voice for the [C]hild, as well as a trained attorney who would give input to the Court as to the best interests of the [C]hild." *Motion of Defendant, Lisette Perez, To Appoint A Guardian Ad Litem*, 01/10/2022, ¶ 4. On January 11, 2022, this Court held a hearing on Appellee's October 31, 2021 Petition for Contempt. At the hearing, this Court appointed Hillary Moonay, Esq. as Guardian *Ad Litem* (hereinafter "GAL") for the Child, directing that she provide this Court with a recommendation as to whether the Child necessitates therapy. The GAL provided her report and recommendations to this Court on February 2, 2022 (hereinafter "GAL

---

[6] 18 Pa. C.S. § 4952.

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

Report"). The contempt matter was then continued to February 3, 2022, where this Court found Appellant to be in willful in contempt of the Agreed-Upon Order.

As a result of Appellant's willful contempt, this Court sentenced Appellant to twenty-one days of incarceration at the BCCF, effective immediately, and provided that Appellant's sentence could be purged upon the completion of a psychiatric evaluation at the BCCF. *Interim Order*, 02/14/2022, ¶ 12. If the psychiatric evaluation could not be completed within twenty-one days, Appellant would be released, but would still be responsible for receiving and paying for a psychiatric evaluation by Dr. John Markey, PsyD, CADC (hereinafter "Dr. Markey"). *Id.* This Court also additionally Ordered Appellant to pay Appellee's attorneys' fees within forty-five days of the Order and gave Appellee sole legal custody over all decisions regarding the Child's mental health. *Id.* at ¶¶ 5, 11. Furthermore, this Court instructed the parties that no one was to inform the Child that Appellant was in jail because of Appellee, in which case Appellee would receive sole physical custody of the Child. *Id.* at ¶ 14.

This Court further Ordered that the Child was to receive a complete psychiatric diagnostic evaluation, and prohibited Appellant from transporting him to his appointments. *Id.* at ¶¶ 7-8. Finally, this Court directed Appellant to do everything in her power to ensure that all Temp. PFA-related charges in Philadelphia be dismissed (including the pending intimidation charge). *Id.* at ¶ 15. Subsequently, on February 14, 2022, this Court reduced its verbal February 3, 2022 Order into a written Interim Custody Order. On February 17, 2022, Appellant timely filed her fast-tracked Notice of Appeal to the Superior Court, as well as her concise Statement of Matters Complained of on Appeal. On March 3, 2022, Appellant then filed a Motion to Stay the Proceedings, which this Court has not yet ruled addressed.

## II. STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant's Statement of Errors Complained of On Appeal states, *verbatim:*

1.     The trial judge made errors in evidentiary rulings significantly impacting the outcome of the case.

    a.     The trial judge prohibited the [C]hild's therapist from testifying, claiming a lack of permission from [Appellee], who has shared legal custody, disregarding that [Appellant] had issued a subpoena to the therapist witness with the intention of calling that witness to refute [Appellee's] allegations.

    b.     The trial judge erred in permitting hearsay testimony and documents which evidence formed a basis for the finding of contempt against [Appellant].

    c.     The trial judge unilaterally called a non-witness against the objection of mother's counsel, to enhance [Appellee's] case and where that witness was present to observe as a member of the executive branch of Pennsylvania government and not as a witness who was called by either party.

2.     The trial judge abused her discretion in finding [Appellant] in contempt.

    a.     The trial judge erred in finding [Appellant] intentionally violated the May 24, 2021 Order, as [Appellant] complied with the order as to counseling.

    b.     The trial judge abused her discretion in finding [Appellant] in contempt for failure to withdraw the Protection from Abuse Order and criminal charges brought by the Commonwealth of Pennsylvania for intimidation of a witness, even if related to the original civil Protection from Abuse Order, for which Protection from Abuse Order [Appellant] diligently pursued and achieved withdrawal per the May 24, 2021 Order.

3.     The trial judge abused her discretion in imposing sanctions on [Appellant], and as to the severity of the sanctions imposed on [Appellant], particularly as there was no prior finding of contempt against [Appellant] and prior orders had been vacated in the May 24, 2021 Order, but for the name of the [C]hild, sharing of legal custody and a payment of counsel fees, per paragraph 11 of the Order.

    a.     The trial judge abused her discretion by imposing financial obligations on [Appellant] as well as attorney (*sic*) fees, for which [Appellant] has no ability to pay.

    b.     The trial judge abused her discretion in that the recited order from the bench at trial was modified to impose additional and non-stated conditions for [Appellant's] purge and release from prison.

- 9 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

## III. DISCUSSION

### A. Standard of Review

In custody cases under the Child Custody Act, the standard of review is whether the trial court abused its discretion. *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). As long as the trial court's findings are supported by competent evidence from the record, its conclusions will not be disrupted absent an error of law or if they are unreasonable. *Id.* In other words, "an abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence." *M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (citations omitted).

"[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *Nelson v. Kresge*, 1417 EDA 2021, 2022 Pa. Super. Unpub. LEXIS 483, *10 (Pa. Super. Feb. 23, 2022). Moreover, "the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004). When there is a finding of contempt in a child custody matter, which occurs when a party violates a court order, the standard of review is whether the trial court committed a "clear abuse of discretion." *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013).

### B. This Court Did Not Abuse Its Discretion In Finding Appellant In Contempt

Appellant first claims that this Court erred in finding her in contempt of the Agreed-Upon Order because Appellant allegedly complied with the Order's condition that the Child attend therapy. Appellant also asserts, mistakenly, that this Court erred in holding Appellant in contempt for failing to withdraw her PFA pursuant to the Agreed-Upon Order.

- 10 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

The contempt power is necessary to preserve the court's authority and the administration of justice, and a court may exercise its civil contempt power to enforce compliance with its orders, so long as it is not to inflict punishment. *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001). "This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This Court also has stated that each court is the exclusive judge of contempts against its process." *G.A.*, 72 A.3d at 269. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. *Garr*, 773 A.2d at 189.

To sustain a finding of civil contempt, the complainant (i.e. Appellant) must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order which was allegedly disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006); 23 Pa.C.S. § 5323(g) (contempt for noncompliance with any custody order). However, if the alleged contemnor is unable to perform and has in good faith attempted to comply with the court order, contempt is not proven. *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009-10 (Pa. Super. 1995) (citations and quotation marks omitted). The alleged contemnor has the burden of proving the affirmative defense that he or she has the present inability to comply with the court order. *Id.*

Here, for the reasons outlined in detail below, this Court found that Appellant willfully and contemptuously did not follow Agreed-Upon Order by refusing to put the Child in therapy. To begin, the Agreed-Upon Order states *verbatim* that

> [The Child] will be in therapy, currently accepted to Bethanna, and awaiting assignment of a therapist. [The Child] will attend therapy twice per month or as otherwise recommended by the therapist. At a time deemed appropriate by the therapist, reality testing will be explored/employed. Each party may issue a one-page letter to the therapist with concerns and hopes for therapy. Communication with the therapist will be by both parties. There will be no unilateral communication by either party.

- 11 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

*Stipulation and Order*, 05/24/2021, ¶ 16. On June 17, 2021, the parties communicated with Mr. Jeffrey Dougherty, MSW (hereinafter "Mr. Dougherty"), a therapist from Bethanna, to set up an evaluation for the Child pursuant to the Agreed-Upon Order. *Exhibit F-7.*

On June 22, 2021, Mr. Dougherty informed the parties that the Child would have bi-weekly sessions on Thursdays, beginning on June 24, 2021.[7] *Id.* at p. 3. In her email responding to Mr. Dougherty and Appellee, Appellant stated that "therapy was ordered for [the Child] to recover from the trauma he experienced during this court case and forced reunification sessions,"[8] and that she "does not agree for [the Child] to additionally see a psychiatrist/psychologist," as to the reality testing. *Id.* at p. 4. In the same breath, Appellant also wrote that the "sessions are ONLY for [the Child] and [Mr. Dougherty] to be in attendance," and referred to Mr. Dougherty as the Child's "individual therapist." *Id.* at pp. 4, 7. Appellee was only informed about the Child's ongoing therapy through Appellant's bi-weekly court-ordered status report.[9]

On October 11, 2021, suspecting that Appellant "was finding excuses to not set up the therapy sessions," Appellee asked Appellant via AppClose if she had a date for the Child's next appointment with Ms. Kendra White, the Child's therapist from Bethanna (hereinafter "Ms. White"), and whether Appellant "was still unwilling to get [the Child] an appointment set up for the reality testing." *Exhibit F-3*; N.T. 01/11/2022, p. 50. Appellant aggressively replied that the Child had "seen at least 6

---

[7] In his email to the parties, Mr. Dougherty states that the initial session would begin on June 24, 2021, but mentioned that he had a doctor's appointment that day. *Exhibit F-7.* Therefore, the Child's session would technically begin on Friday June 25, 2021. *Id.*

[8] This statement is wholly inaccurate. This Court never ordered that the Child had to attend therapy to recover from trauma, as Appellant claims. Specifically, at the May 24, 2021 hearing, this Court expressed concern that the parties' proposed agreement did not contain a provision for the Child to obtain counseling on the basis that he had a "lot of issues," due to having "been very poisoned over the past at least year since the reunification with Dr. Lovrinic ended," and that it had "never seen a child so belligerent and rude," after interviewing the Child *in camera.* N.T. 05/24/2021, pp. 16, 18.

[9] On August 11, 2021, after noticing that there was "no group communication to the therapist in regards to scheduling," Appellee asked Appellant, via AppClose, to copy him onto any communications regarding scheduling and cancellations of therapy appointments. *Exhibit F-2.*

- 12 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

therapists[10] and [that] continuing to put him through several more is damaging[,] which several medical professionals have stated."[11] *Id.* Appellant also mentioned that she had not spoken to Bethanna and that "there was never ongoing communication, regarding scheduling, regarding anything." *Id.*

Subsequently, on October 31, 2021, Mr. Tim Mendoza, the Bethanna outpatient supervisor (hereinafter "Mr. Mendoza"), informed the parties that Ms. White "made several attempts since September to schedule therapy sessions with [the Child]," and informed them of Bethanna's attendance policy, which dictates that Bethanna "cannot keep a client open after 30 days of inactivity." *Exhibit F-6.* Pursuant to Mr. Mendoza's email, Bethanna discharged the Child from its services that day. *Id.* Appellee testified that the only reason he found out that the Child had stopped his sessions with Bethanna was because he contacted Bethanna. N.T. 01/11/2022, p. 72.

After the Child was discharged from Bethanna, Appellant testified that she had not made any efforts to get him into any other counseling because "he was discharged. And I don't want to say another therapist said whatever so…." N.T. 01/14/2022, p. 90; N.T. 02/03/2022, p. 115. Between June 14, 2021[12] and October 27, 2021, the Child attended exactly five (out of six) sessions with Mr. Dougherty and Ms. Kendra White (hereinafter "Ms. White"). *Exhibit F-8.* Out of those five sessions, the Child only attended three of them individually. *Id.* In direct contradiction to her emails with Appellee and Mr. Dougherty that the sessions were solely for the Child, Appellant attended the other two sessions with the Child. *Id.* The Child has not been in therapy since October 27, 2021. *Id.*; N.T. 02/03/2022, p. 115.

It was clear to this Court that Appellant's attitude towards therapy for the Child is entirely at fault, and this led to the finding of contempt against her. At the January 14, 2022 Hearing, Appellant

---

[10] Appellant's representations as to the number of therapists the Child has seen are inconsistent. *See also* N.T. 02/03/2022, p. 125 (alleging eight therapists); N.T. 01/11/2022, p. 86 (alleging seven therapists); *Exhibit F-15* (alleging six therapists).

[11] Appellant did not provide any evidence from any professionals, "medical", or otherwise to substantiate her assertion.

[12] The intake appointment was June 14, 2021. *See Exhibit M-3*, p. 2.

- 13 -

Case# 2016-62079-120 - JUDGE.26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

testified that she believed that the required therapy "was very detrimental to [her] son," on the basis that the Child "is being told to go to counseling, and he doesn't feel like he needs to express anything." N.T. 01/14/2022, pp. 85-86. In fact, in her own Answer to Appellee's Petition for Contempt, Appellant baldly stated that "the ongoing attempts to force therapy are harmful to the [C]hild and will continue to be harmful to the [C]hild," and that the Child was harmed "by the multiple therapists having been imposed on him." *Answer to Petition for Contempt*, 12/09/2021, ¶¶ 10, 11. In complete contradiction to the communications from Bethanna, she proceeded to blame Appellee for having created "a hostile environment with each therapist such that they are unable or unwilling to engage in further therapy." *Id.* at ¶ 4; *Exhibits F-6-8*. Curiously, however, Appellant never filed a Petition to Modify the Agreed-Upon Order to request that the counseling provision be removed.

Additionally, it was abundantly clear to this Court that Appellant believes it is everyone else's fault for not putting the Child in therapy. She blamed Appellee for the Child being discharged from Bethanna, baselessly claiming that he was "constantly calling, from [her] understanding, privately to the therapist, continuously e-mailing back to back," which according to her, "became a very big disruption to Bethanna." N.T. 01/14/2022, p. 82. Incredibly, she also blamed Appellee for not helping her find another therapist., despite actively engaging the Philadelphia Police in charging him with Witness Intimidation for attempting to communicate with her about therapy and for asking whether she would abide by the Agreed-Upon Order. N.T. 02/03/2022, pp. 163-65.

Appellant also blamed her refusal to place the Child in therapy onto the Child himself. Appellant claims it "affected his mood," and that he "felt like it was interfering with the positive things that he has going on in life." N.T. 02/03/2022, p. 124. She went so far as to say that the Child was "furious that he must see yet another therapist and that he even must continue therapy sessions." *Exhibit M-3*, p. 8 (09/13/2021 "Summary"). These statements were inconsistent with the GAL Report, in which the Child, when asked about his thoughts towards therapy, stated that the only reason

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

he did not like going to therapy was because it took time away from his activities, which include football and boxing. *Exhibit CE-1*, p. 2. He did not mention anything about his mood. *Id.* By way of reminder, the Child is an active eleven-year-old boy.

Further, the GAL spoke with Dr. Faye Lovrinic, PsyD (hereinafter "Dr. Lovrinic") and Ms. Bowers, both of whom treated the Child, and both of whom confirmed that Appellant's attitude towards therapy was problematic. Dr. Lovrinic told the GAL that Appellant "needs to change her attitude towards the reunification process in order for [the Child] to budge towards a relationship with [Appellee]." *Exhibit CE-1*, p. 3. Dr. Lovrinic additionally stated that "as soon as [Appellant] saw any glimmer of hope for reunification, she 'turned'," and "accused [Dr. Lovrinic] of manipulating [the Child]." *Id.* In her phone call with the GAL, Ms. Bowers went as far as to say that the Child has "something deep-seated going on," and that it was unclear "how much of it is his own stuff and how much he has 'drank the KoolAid' from [Appellant]." *Id.* at p. 2. Both Dr. Lovrinic and Ms. Bowers, as did the GAL in her recommendation, believed that the Child needed therapy for his long-term emotional well-being. *Id.* at p. 4.

As a final note, despite Appellant's mistaken impression that this Court also found her in contempt for her failure to withdraw her Philadelphia PFA against Father, Appellant was only held in contempt for her failure to place the Child in therapy. This Court, however, was appalled to learn that days before Appellee had been served the Temp. PFA, Appellant had called the police on Appellee on the basis that he was violating the PFA by intimidating her.[13] *See Exhibit F-11.* In the May 13, 2021

---

[13] The following exchange took place at the February 3, 2022 Hearing:

| The Court: | Let's back up. Let me back up. Who informed the DA's office or the police department that there was an alleged violation of the PFA? You would agree that that was you correct? |
|---|---|
| Appellant: | Yes. That's when a PFA was an order and it was violated. |
| The Court: | But you're the one who reached out to let them know. Did you contact a police officer in Philadelphia? Who did you reach out to? |
| Appellant: | I believe it was a police officer. That's who you would go to if someone breaks a PFA. |

- 15 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

Affidavit of Probable Cause, Appellant told law enforcement officials that Appellee had been served the Temp. PFA on May 4, 2021 and that he had sent her text messages on May 5th and May 8th,[14] as well as emails on May 6th and May 8th of 2021.[15] *Id.* Contrary to Appellant's statements to the Philadelphia Police, the Bucks County Sheriffs served Appellee with the Temp. PFA on May 10, 2021. *Exhibit F-14.*

Subsequently, on May 26, 2021, in accordance with the Agreed-Upon Order, Appellant withdrew the Temp. PFA without prejudice. *Exhibit M-2.* On June 4, 2021, the Philadelphia Municipal Court hearing this matter dismissed the PFA Contempt due to the fact that there was no valid PFA to be violated. N.T. 01/11/2022, p. 38. Imagine this Court's surprise when it learned that Appellee suddenly faced Witness Intimidation[16] charges relating to the withdrawn Temp. PFA stemming from the following exchange between the parties on October 11, 2021:

[....]

Appellee: Are you unwilling to get [the Child] an appointment set up for reality testing? At this point, I'm very uncomfortable with the circumstances. You have expressed you don't want him in therapy… no one is returning my calls or emails when it comes to therapy nor do I get included in calls or emails for scheduling or any discussion on your end…i (*sic*) just get told what's happening…you've argued against an assessment for reality testing and won't schedule him…and you are pursuing the criminal PFA portion of the Stipulation…basically in complete contempt of the order. I really want things to calm down for

| The Court: | So you're the one who started the process, right? |
| Appellant: | I had a PFA. He broke the PFA. |
| The Court: | Right. But you would agree that a police officer didn't simply approach you, nor an assistant district attorney, to say, was there a violation of your PFA? That you were the one who initiated that process? |
| Appellant: | Yes. |

N.T. 02/03/2022, pp. 53-54.

[14] These were AppClose messages where on May 5, 2021, Appellee is asking Appellant for a picture from the Child's "sports" and where on May 8, 2021, Appellee sends another message asking if everything was alright (seeing as Appellant had not responded to the previous message). *Exhibit F-12.*

[15] These emails were between Ms. Bowers and the parties, in which Appellee was asking Ms. Bowers whether she was hearing back from Appellant since she had not responded to his AppClose messages about sending the Child his court-ordered letters. *Exhibit F-13.*

[16] 18 Pa. C.S. § 4952.

- 16 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

[the Child] and for him to get the help he needs[.] We really gotta (*sic*) do this again??

[....]

Appellant: This app is NOT to discuss anything besides [the Child]. Your criminal case is versus the Commonwealth of Pennsylvania. The criminal case is NOT [Appellee] v. [Appellant]. You are saying "We gotta do this again?", after suggesting that I am in contempt of a custody order. You are implying/threatening that you will file to place me in contempt of the Bucks County order because the state charged you with a crime in Philadelphia County and because Bethanna hasn't met your personal expectations. This is intimidation, flat out.

[....]

*Exhibit F-15.*

During the proceedings before this Court, when discussing the ongoing criminal case against Appellee, Appellant essentially shrugged her shoulders, incorrectly claimed that she had a Fifth Amendment right not to testify, and then stated that she had testified at the Philadelphia hearing that she did not want that case "to affect [her] in a negative way...." N.T. 02/03/2022, p. 133. As a result of Appellant's actions, Appellee, the father of the Child, is now facing serious criminal charges and was forced to hire a second attorney to defend against them. Therefore, while Appellant did withdraw the PFA, her actions and lies related to the ongoing Philadelphia case greatly disturbed this Court, as it was understood that the spirit of the Agreed-Upon Order was for that entire matter to disappear.[17]

This Court has rarely witnessed so much hatred in a parent as it has in Appellant when it comes to co-parenting with Appellee. Appellant demonstrated to this Court that she, for whatever reason, absolutely despises Appellee and made it very clear that she will go out of her way to ensure he does not have a relationship with the Child, no matter how much her actions harm the Child in the process.[18] By actively refusing to place the Child in therapy, Appellant continues to poison the last

---

[17] Upon reading the August 28, 2021 Affidavit of Probable Cause, it was apparent to the Court that Appellant was willing to misrepresent the Agreed-Upon Order to Philadelphia law enforcement officials so that Appellee's criminal case could proceed. *Exhibit F-1.*

[18] Appellant, however, has no issues with receiving child support from Appellee. *See* N.T. 03/16/2021, p. 8.

- 17 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Stacey Allen

surviving strands of an already-delicate father-son relationship. Accordingly, because Appellant: (1) had notice of the Agreed-Upon Order; (2) did not follow the Agreed-Upon Order's provision to place the Child in therapy; and (3) did so with wrongful intentions, this Court did not err in finding Appellant in contempt of the Agreed-Upon Order.

### C. This Court Did Not Err in its Evidentiary Rulings

#### 1. This Court Did Not Err in Excusing Ms. White From Testifying

Appellant first claims that this Court abused its discretion in prohibiting the Child's therapist, Ms. White, from testifying, despite having issued a subpoena. Appellant argued that the purpose of Ms. White's testimony would be to demonstrate the Child's reluctance to participate in therapy and that such a purpose was critical to her defense. N.T. 02/03/2022, p. 94.

It is well-settled that "the admission or exclusion of evidence is within the sound discretion of the trial court." *J.G. v. A.L.*, 647 WDA 2019, 2019 Pa. Super. Unpub. LEXIS 4219, *39 (Pa. Super. Nov. 8, 2019) (citing *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1226 (Pa. Super. 2011)). "In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *Id.*

In this case, as mentioned above, both parties have shared legal custody of the Child, which pursuant to the Pennsylvania Domestic Relations Code, is defined as the right of more than one individual to "make major decisions on behalf of the child, including, but not limited to medical, religious and educational decisions." 23 Pa. C.S. § 5322(a). Pursuant to Appellant's subpoena, Ms. White was present at the February 3, 2022 Hearing with her attorney, Mr. Chris Coval, Esq. (hereinafter "Mr. Coval"). N.T. 02/03/2022, p. 90. Neither Appellee nor this Court were made aware of Appellant's subpoena, and as such, Appellee had not given his consent for Ms. White to testify prior to her appearing in court. *Id.* at pp. 90-91. Ms. White and her counsel made it clear to this Court that Ms. White had not conversed with either party prior to the hearing, that she was only here

- 18 -

pursuant to the subpoena, and that unless there was an agreement among the parties as to permitting her to testify, she would prefer not to testify. *Id.* at pp. 92-93. When asked whether Mr. Coval was objecting to his client testifying if she did not have the consent of both parents, Mr. Coval stated that he indeed was. *Id.* at pp. 94-95.

Furthermore, after discussing the matter with his counsel, Appellee also objected to permitting Ms. White from testifying. *Id.* at p. 94. Although Appellant argued that Ms. White's testimony would go to the Child's "reluctance to engage in therapy," and that such testimony was "critical to [her] defense," Appellant did not provide sufficient evidence as to how Ms. White's testimony would explain why Appellant did not file a petition to modify the Agreed-Upon Order, thereby availing herself of the proper legal remedy to avoid being found in contempt. *Id.* at pp. 94-95. Therefore, for the above-mentioned reasons, this Court did not abuse its discretion in excusing Ms. White from testifying.

### 2. This Court Did Not Err in Questioning Ms. Maryann McEvoy

Appellant next claims that, despite her counsel's objections, this Court unilaterally called Ms. Maryann McEvoy (hereinafter "Ms. McEvoy") as a witness to enhance Appellee's case. Appellant further contends that Ms. McEvoy was "only present to observe as a member of the executive branch." *Statement of Matters Complained of on Appeal*, 02/17/2022, ¶ 1(c).

To begin, this Court was wholly in its right to call Ms. McEvoy as a witness. The Pennsylvania Rules of Evidence are very clear: so long as it gives notice to the parties, a trial court may call and examine a witness *sua sponte* or at a party's request, and a party may object to the court's calling and/or examining of said-witness. Pa. R.E. 614. Here, despite her 1925(b) Statement, Appellant did not object to this Court calling Ms. McEvoy; on the contrary, Appellant's counsel provided this Court with a cellphone number for which to call her to testify at the February 3, 2022 Hearing. N.T. 02/03/2022, pp. 4-5.

- 19 -

Second, Ms. McEvoy's involvement in this case went beyond mere observation. Her engagement, in a case which involves a minor child, was sudden, completely inappropriate, and greatly concerned this Court. Ms. McEvoy is employed at the Office of Advocacy and Reform out of the Pennsylvania Governor's Office (hereinafter "OAR") as a child advocate for the Commonwealth. N.T. 01/11/2022, p. 3; N.T. 02/03/2022, p. 6. She has worked at the OAR since August 2, 2021 (approximately six months). N.T. 02/03/2022, at p. 8. Ms. McEvoy is not a lawyer, nor does the OAR have legal counsel. *Id.* at pp. 18, 21. Pursuant to Ms. McEvoy, she became involved in this case after her supervisor, Dr. Dan Jurman (hereinafter "Dr. Jurman"), forwarded her a number of files sent to him regarding individual concern within the Bucks County Custody Court. *Id.* at pp. 6-7. Within these files were emails from Appellant to Dr. Jurman from spring of 2021, in which Appellant alleged that she was concerned about the safety of the Child following an alleged suicide attempt[19] during a therapy session and where Appellant expressed concern about "forcing" the Child into therapy. *Id.* at pp. 7-9.

This Court first became aware of Ms. McEvoy's presence on January 11, 2022, when it asked Appellant's counsel to identify who was present in the courtroom. N.T. 01/11/2022, p. 3. Ms. McEvoy testified that she was "strictly [there] in support of the appointment for a GAL for [the Child]," and that she (as well as another local attorney) "were talking about a GAL program which [they] started, and [she was] strictly [there] just supporting that program." N.T. 01/11/2022, pp. 3-4. Despite her claims of neutrality, Ms. McEvoy testified that she had only spoken to Appellant (who she referred to by her first name) and Appellant's counsel, to which Appellee indicated that he wished this Court to sequester Ms. McEvoy, as she could be a potential witness. *Id.* at p. 6. Appellant's counsel

---

[19] Appellant testified that the eleven-year old Child "could have" tried to commit suicide because he dashed away from Ms. Bowers and ran in traffic, but she is also "pretty sure" she did not "characterize" this as a suicide attempt to Ms. McEvoy. N.T. 02/03/2022, pp. 127-28. To be clear, Ms. Bowers, the therapist who witnessed the incident, did not make a report about it, nor did she ever characterize the behavior as a "suicide attempt." *Id.* at p. 129.

- 20 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E-Filed by: Stacey Allen

did not object to the sequestration of Ms. McEvoy, and she was not called as a witness for the rest of the January 11, 2022 Hearing. *Id.* at pp. 6-7.

Ms. McEvoy then suspiciously chose to further involve herself into these confidential proceedings. At 9:30 P.M. on February 2, 2022, the night before the hearing, the GAL sent a troubling email to this Court regarding an update to her GAL Report. *Court Exhibit 1*, 2/03/2022. Specifically, the GAL informed this Court that, less than 24 hours after the GAL had submitted the confidential GAL Report to this Court and counsel for the parties, she received a phone call from Ms. McEvoy, who had somehow received a copy of the GAL Report. *Id.* According to the GAL, without disclosing how she obtained the GAL Report, Ms. McEvoy asked her several detailed questions about this case (which the GAL did not answer due to the confidential nature of this case) and failed to inform the GAL about her alleged role in this case. *Id.*

Upon receiving the GAL's email, this Court called Ms. McEvoy as a witness at the February 3, 2022 Hearing. N.T. 02/03/2022, pp. 3-5. Ms. McEvoy referred to this matter as a "high conflict custody case," and that "it fell in line with a few other cases," that came across her office's desk. *Id.* at p. 8. The recommendation that she, as well as the rest of her office, made "would be the utilization of a guardian *ad litem* who could really be just a non-bias[ed] advocate for the children within those cases." *Id.* In the event that an immediate concern arises with a child's safety, her Office calls Child Line and Children and Youth (hereinafter "C&Y"). *Id.* at p. 9.

Ms. McEvoy proceeded to testify that she was aware that the Child had never been involuntarily committed nor admitted to a mental health facility, and that despite being aware that therapists are mandated reporters, she had never followed up with the therapist involved in the alleged suicide attempt because she did not think it was important. *Id.* at pp. 9-11. Ms. McEvoy was under the impression, based on the emails she received only from Appellant, that the Child had been taken to a hospital for examination, though she did not have any details about which hospital the Child had

- 21 -

allegedly been taken to or the nature of the hospitalization. *Id.* at pp. 11-12. Conveniently, neither Appellee nor his counsel were copied onto any of these emails between Appellant and Ms. McEvoy.

When questioned as to whether she had ever contacted Appellee or his counsel, despite being aware that Appellee was the father and had shared legal custody of the Child, Ms. McEvoy answered that she had not, reasoning that she "wasn't trying to look into the case specifically," and that she "was really just trying to provide an overarching of recommendations and that was related to the GAL." *Id.* at pp. 13-14. Incredibly, when this Court asked her whether she thought it was "appropriate to not reach out to the father of [the Child], even though he has shared legal custody," Ms. McEvoy testified that she "didn't have [Appellee's] information," that he had not reached out to her, and that she was only providing overarching recommendations because, "in all honesty[,] there's no harm in having an unbiased perspective in the courtroom advocating for the child specifically." *Id.* at pp. 14-15.

After asked about why her involvement had not ended on January 11, 2022, when this Court appointed a GAL, Ms. McEvoy proceeded to inform this Court that Appellant had emailed her the GAL Report, citing potential inconsistencies in the GAL Report. *Id.* at pp. 16-17. Ms. McEvoy then felt the need to follow up "to make sure all current therapists were contacted," and that "all bases were covered," instead of deferring to Appellant's counsel. *Id.* After asking Ms. McEvoy whether she believed it more appropriate to refer Appellant back to her attorney after receiving the GAL Report, Ms. McEvoy stated that it was her understanding that Appellant had already reached out to her legal counsel. *Id.* at pp. 17-18.

Without confirming with Appellant, Ms. McEvoy "imagine[d] that [Appellant] would have gone through her counsel before releasing the [GAL Report] to [her]," and never bothered to ask Appellant whether Appellee had consented to release the GAL Report. *Id.* at pp. 18-19. Along those lines, and to this Court's astonishment, Ms. McEvoy was also under the impression that "all elements of the custody cases were public," including the transcripts generated at these hearings. *Id.* at p. 21.

- 22 -

Finally, when asked about whether she had followed up with any independent sources to confirm whether any of the information Appellant had relayed to her was accurate (or even based on reality), Ms. McEvoy simply stated that she had conversed with Appellant's attorney. *Id.* at p. 39. Accordingly, for the reasons mentioned above, and due to the hostile nature of this case, this Court did not err in questioning Ms. McEvoy.

### 3. Appellant's Assertion That This Court Permitted Inadmissible Hearsay Testimony Is Waived.

Appellant next asserts, baldly, that this Court erred in permitting hearsay testimony and documents, which were then used to find Appellant in contempt. A Pa. R.A.P. 1925(b) statement is an important element of the appellate process, as it requires an appellant to clearly and concisely articulate its challenges to a trial court's decision, thus creating efficiency and ensuring appellate review of appropriate issues. *See Tucker v. R.M. Tours*, 977 A.2d 1170, 1173 (Pa. 2009). However, it is well-settled in Pennsylvania law that a timely Pa. R.A.P. 1925(b) statement does not automatically equate to issue preservation. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2018); *Bayview Loan Servicing, Inc. v. Bucci*, 2925 EDA 2018, 2020 Pa. Super. Unpub. LEXIS 829 at * 5 (Pa. Super. Mar. 10, 2020) (citing *Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002)). To that effect, an appellant must, through its statement of errors, explicitly identify "each ruling or error that [it] intend[s] to challenge with sufficient detail to identify all pertinent issues." Pa. R.A.P. 1925(b)(ii), (iv).

Failure to abide by these rules results in the waiver of those issues not properly raised, as the appellant must do more than file a vague, overly-broad, or simply incoherent statement of errors. Pa. R.A.P. 1925(b)(vii). It is not up to the trial court to frame the issues for an appellant by either guessing or anticipating. *Lemon*, 804 A.2d at 38; *Barnes v. Alcoa, Inc.*, 145 A.3d 730, 734 (Pa. Super. 2016) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review."); *Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa. Super. 2016) ("When an appellant fails [to] adequately

- 23 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

[] identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."). As such, when an appellant fails to identify in a vague Pa. R.A.P. 1925(b) statement the specific issue it wants to raise on appeal, "the issue is waived, even if the trial court guesses correctly and addresses the issue." *Id.*

In this case, as is apparent from her 1925(b) Statement, Appellant failed to specify what documents and what statements based in inadmissible hearsay she believed formed the basis for this Court's decision in finding her in contempt. Accordingly, this Court is without sufficient information to address this particular claim, and as such, it is deemed waived for the purposes of this Opinion.

### D. This Court Did Not Abuse Its Discretion When It Sanctioned Appellant

Finally, Appellant argues that this Court abused its discretion when it decided to award attorneys' fees to Appellee's counsel and when it ordered Appellant to undergo a period of incarceration. Appellant further contends that this Court modified its Order to impose additional and non-stated conditions for Appellant's purge and release from prison.

Pennsylvania law explicitly provides that "a party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa. C.S. § 5323(g)(1). "Contempt of court is the obstruction of the court's orderly process. It may be committed directly or indirectly. It is direct when committed in the court's presence." *Garr*, 773 A.2d at 190. In the event that a court finds a party in contempt of an order, it is permitted to do impose the following:

(i)      Imprisonment for a period of not more than six months.
(ii)     A fine of not more than $ 500.
(iii)    Probation for a period of not more than six months.
(iv)     An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
(v)      Counsel fees and costs.

23 Pa. C.S. § 5323(g)(1)(i)-(v). In the event an individual is sentenced to jail, the court is to specify the condition which, when fulfilled, will result in the release of that individual. 23 Pa. C.S. § 5323(g)(2).

- 24 -

"[A] court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa. C.S. § 5339.

In this case, Appellant's claims are completely without merit. To begin, Appellant's claim that this Court imposed non-stated conditions for Appellant's release from jail is waived as it is too vague for the purpose of a 1925(b) Statement. Next, after finding Appellant to be in contempt of its Order, this Court imposed the following sanctions upon Appellant: a period of twenty-one (21) days of incarceration at the BCCF and $3,450 in attorneys' fees,[20] both of which were permissible sanctions. As previously mentioned, Appellant could be released from the BCCF as soon as she received a psychological evaluation, and Appellant was to be responsible for the costs of said-evaluation. Within three (3) days of being at the BCCF, Appellant was evaluated by a Dr. Gerald F. McKeegan, Ph.D., ABPP (hereinafter "Dr. McKeegan") and by February 9, 2022, the date that this Court received Dr. McKeegan's evaluation, Appellant was released from the BCCF.

Despite Appellant's confusion regarding this Court's February 14, 2022 Order, this Court did not modify Appellant's purge conditions. The three-page boilerplate "evaluation" that this Court received was, at best, paltry and, at worst, devoid of any meaningful information.[21] In fact, contrary to this Court's Order, Dr. McKeegan conducted a Mental Health Evaluation rather than the ordered Psychiatric Evaluation. *See Bucks County Correctional Facility Mental Health Evaluation*, 02/07/2022, p. 1. As such, this Court's February 14, 2022 Interim Custody Order directed Appellant to receive a more thorough psychological evaluation by Dr. Markey. This Court did not resend Appellant to jail nor did

---

[20] Reduced to $100.00 an hour as it as a referral through the Bucks County Bar Association.

[21] In fact, most of the evaluation discussed irrelevant matters, such as Appellant's dietary restrictions and the alleged panic attack that she had at the end of the February 3, 2022 Hearing. *See Bucks County Correctional Facility Mental Health Evaluation*, 02/07/2022, pp. 2-3. Incredibly, in complete disregard of the fact that this is not a criminal case, the evaluation went as far as to recommend that Appellant remain compliant with all conditions of her non-existent probation/parole requirements. *Id.* at p. 3.

- 25 -

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

Case# 2016-62079-120 - JUDGE:26 Received at County of Bucks Prothonotary on 03/18/2022 2:39 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Stacey Allen

it add supplemental purge conditions; in fact, Appellant satisfied her purge conditions before this Court could even issue its February 14, 2022 Interim Order.

Furthermore, Appellant's claim that this Court intentionally imposed financial obligations onto Appellant knowing that she would be unable to pay is absurd. First, there is "no controlling case law relative to a finding of based on a party's failure to comply with a visitation or custody Order that mandates a determination of the contemnor's ability to pay, prior to the imposition of a sanction in the form of attorneys' fees." *Hopkins v. Byes*, 954 A.2d 654, 659 (Pa. Super. 2008). Second, Appellant did not object when this Court questioned Appellee's counsel about his fees and hours worked on this case, nor did Appellant object to this Court's imposition of attorneys' fees. Third, Appellant provided no supporting evidence, either at the hearings or via motion, that she was unable to pay.

As a final matter, this Court warned Appellant several times of the possibility of sanctions if she kept playing games with this Court. *See* N.T. 03/16/2021, p. 38; N.T. 05/24/2021, p. 27; N.T. 01/11/2022, p. 110.Over the course of this case, this Court witnessed Appellant constantly nit-pick Orders, manipulate numerous people, and go out of her way to ensure that the Child would not attend therapy (individual or reunification with Appellee), despite this Court's Orders. At the March 16, 2021 hearing, in which Appellant was found in contempt, this Court made it abundantly clear to Appellant that she has shared legal custody with Appellee and that if she did not "start acting like [she] [did], then [this Court] would give sole legal custody to [Appellee]." N.T. 03/16/2021, p. 30. In fact, as previously mentioned, Appellant was sanctioned with a thirty (30) day suspended sentence and attorneys' fees, to which her counsel did not object to. *Id.* at pp. 24, 33.

Despite Appellant's illogical theory regarding vacated contempt orders, vacating the physical order of contempt does not preclude nor erase the finding of contempt, especially when one party continues to willfully ignore or abide by custody orders. Enough is enough, and accordingly, for the

above-mentioned reasons, this Court did not abuse its discretion in sanctioning Appellant the way it did.

## IV.    CONCLUSION

For the aforementioned reasons, this Court finds no merit to any of Appellant's allegations in her Concise Statement of Matters Complained of on Appeal, and respectfully submits that the Superior Court affirm this Court's decision.

BY THE COURT:

DATE

3/18/2022

CHARISSA J. LILLER, J.

N.B. It is your responsibility to notify all interested parties of the above action.

- 27 -